# Arnett *v.* Willoughby, *et al.*

*Bill to Foreclose and to Annul Certain Mortgages.*

(Decided December 17, 1914. 67 South. 426.)

1. *Mortgages; Foreclosure; Parties.*—Where a second mortgagee has transferred his mortgage and has no interest to be affected by the bill to foreclose the first mortgage, such second mortgagee is not a proper party, and, as to him, the bill is without equity.

2. *Same; Assignment; Transfer of Secured Note.*—If upon a valuable consideration, the transfer, by a mere delivery, of a note secured by a mortgage, operates as an equitable assignment of the mortgage to the transferee.

3. *Subrogation; Payment for Mortgagor.*—Where one pays or advances money to pay the mortgage, at the instance of the mortgagor, and for his benefit, such one is by equitable assignment entitled to be subrogated to the lien of the mortgage for reimbursement.

4. *Same; First and Second Mortgage.*—The right of subrogation to the lien of the mortgage of one who advances money, at the request of the mortgagor, for the payment of the note secured by such mortgage, exists as against those claiming under a second mortgage, taken with notice of the first mortgage.

5. *Mortgages; Transfer of Part of Secured Notes; Priority of Lien.*—Where one pays the first note secured by a mortgage at the request of the mortgagor, they giving him their note therefor and agreeing he shall hold the note paid as collateral, and to whom, in furtherance of such agreement, and for the accommodation of the mortgagors, the mortgagee assigns the note paid, while such one is entitled to subrogation to the lien of the mortgage for reimbursement, he is not entitled to payment out of the mortgaged property prior to the payment of the other notes secured by the mortgage, and still held by the mortgagee, as would be the case if the assignment by the mortgagee was for his own benefit.

6. *Same; Foreclosure; Several Notes.*—A mortgage securing several notes maturing at different times may be foreclosed as to all on the default as to one, if such default in one matured all, by express or implied provisions, but it is otherwise in the absence of such a provision, and the foreclosure is only as to those due when the decree is rendered. Such decree, however, stands as security for the others.

7. *Same; Foreclosure; Cross Bill.*—While a mortgage securing several notes maturing at different times will be foreclosed at the suit of the transferee of the notes first maturing, only as to the notes due when the decree is rendered, although the mortgage authorizes foreclosure as to all on default in one, since this is sufficient to conserve his interest without disturbing the mortgagee as to the notes not due, yet the mortgagee may by a cross bill foreclose as to all.

8. *Equity; Multifariousness; Mortgage Foreclosure.*—A bill to foreclose a first mortgage, insofar as it seeks to have the second mortgage, and the sale under a power therein, declared void, seeks relief not germane to, but independent of, and in no way connected with, its foreclosure features, and is multifarious; it being immaterial to complainant whether the second mortgage, or such a sale, be void, his claim to the land being superior to those under the second mortgage.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by M. G. Arnett against Pauline Willoughby and others, to foreclose a mortgage, and for other relief. From a decree sustaining demurrers to the original and amended bill, complainant appeals. Affirmed.

RICHARD B. KELLY, for appellant.

A. C. & H. R. HOWZE, for appellee.

DE GRAFFENRIED, J.—The facts upon which the complainant rested his right to relief in this case were stated by him in his bill of complaint as amended, as follows:

First. That Lizzie S. Arnett, the wife of H. B. Arnett, was indebted to John P. Willoughby in the sum of $7,383.62, which was evidenced by 17 promissory notes, each bearing date July 1, 1910, each for the sum of $400 and drawing interest at the rate of 7 per cent. per annum, and payable at the Birmingham Trust & Savings Bank, Birmingham, Ala., on or before January 1, 1911, July 1, 1911, January 1, 1912, and July 1, 1912, and the others payable on or before six months after July 1, 1912, up to January 1, 1919, and also one note for $383.62. When this last note matures does not clearly appear from the bill.

Second. That on July 5, 1910, in order to secure the above indebtedness, the said Lizzie S. Arnett and her husband, H. B. Arnett, executed and delivered to the said Willoughby a mortgage on certain real estate of said Lizzie S. Arnett which is described in the bill.

Third. That in July, 1911, the second, in the series of notes secured by said mortgage, became due, and that the complainant, at the request of the mortgagors and under an agreement with them that complainant should succeed to the lien of said mortgage for his reimbursement, paid to the said John P. Willoughby, or to some one for him, the amount then due on said note, to wit, $428, and that the said note, indorsed in blank by the said Willoughby, was assigned by delivery to complainant or to some one for him, and that the said mortgagors gave to complainant their note, due one year after date, for said sum, with the said mortgage notes attached thereto as collateral security.

Fourth. That on January 1, 1912, the third note in said series of notes secured by said mortgage became due, and that complainant, at the request of said mortgagors and under an agreement with them that he should succeed to the lien of said mortgage for his re-

imbursement, paid to Pauline P. Willoughby the amount then due on said note, to wit, $442, and that the said note was assigned by delivery to complainant or to some one for him, and that the mortgagors gave to complainant their note, due six months after date, for said sum, with said mortgage note attached as security therefor; that John P. Willoughby, prior to this time, had died; and that Pauline P. Willoughby, his widow, had become the sole owner of the mortgage and of the mortgage indebtedness secured thereby.

Fifth. That on the 1st day of July, 1913, the sixth note in the series of notes secured by said mortgage became due, and that on November 17, 1913, there remained unpaid on said note $200; that S. E. Thompson, at the request of the mortgagors, paid to the said Pauline P. Willoughby the said sum of $200; that the said note was assigned to him, or to some one for him, by the said Pauline P. Willoughby by delivery; that said mortgagors executed and delivered to said S. E. Thompson their two notes for $100 each, with said mortgage note as collateral security therefor, and that before the filing of this bill complainant paid to the said S. E. Thompson the amount due on said note, under an agreement with the mortgagors that complainant should succeed to the lien of the mortgage for his reimbursement, and that said Thompson assigned by delivery to complainant, or to some other person for him, the said notes so given to him by said mortgagors with said mortgage note as collateral security; that none of the indebtedness evidenced by the notes above referred to as being the property of the complainant has ever been paid.

Sixth. That, subsquent to the execution and delivery of the above-described mortgage, the said Lizzie S. Arnett and her husband, H. B. Arnett, executed and

delivered to one Kyser, to wit, on July 13, 1910, a mortgage to secure an alleged indebtedness of $1,000; that Kyser transferred and delivered the said mortgage and the alleged indebtedness secured thereby to the Jefferson County Savings Bank; that said Jefferson County Savings Bank has sold the property under the power of sale contained in said second mortgage; that at the sale the said Jefferson County Savings Bank became the purchaser of the property, and has assumed possession of the same.

Seventh. Complainant alleges in his bill that the mortgage which Kyser transferred to the Jefferson County Savings Bank was fully paid before the property was sold under the mortgage; and the bill alleges that said mortgage was given by Lizzie S. Arnett to secure an indebtedness of her husband, and not to secure her own debt, and that the Jefferson County Savings Bank well knew these facts when it acquired said mortgage from Kyser.

Eighth. Complainant claims that he is entitled to have the amount due him on account of the Willoughby mortgage notes above referred to, including a reasonable attorney's fee for collecting the same, as well as the amount still due to Pauline P. Willoughby from said mortgagors, Lizzie S. Arnett and H. B. Arnett, ascertained; and said mortgage foreclosed. Complainant also claims that he is entitled to be first paid, out of the proceeds of said sale, the amount which it is ascertained is due him on account of the above transactions.

Complainant further prays that the Kyser mortgage and note, and the sale had thereunder, be declared null and void.

(1) 1. "The scope and purpose of a bill for the foreclosure of a mortgage on lands is to cut off the equity

of redemption of the mortgagor, to obtain a decree for the sale of the estate created and passing by the mortgage, and the application of the proceeds of sale to the payment of the mortgage debt. Such being the scope and purpose of the bill, the general rule in a court of equity applies that all persons whose interests are to be affected or concluded by the decree must be made parties."—*Wells v. Amer. Freehold Land Mortgage Co.,* 109 Ala. 430, 20 South. 136.

Under the allegations of this bill, all of the parties to the bill except Kyser are proper parties to the bill. Kyser, so the bill as amended alleges, has no interest to be affected by the bill, and in so far as he is concerned the bill is without equity.—*Doe ex dem. Duval's Heirs v. McLoskey,* 1 Ala. 708.

(2) 2. "A transfer by delivery merely of a promissory note secured by a mortgage, if based upon a valuable consideration, operates as an equitable assignment to the transferee of the mortgage by which the debt is secured."—*Doe ex dem. Duval's Heirs v. McLoskey,* 1 Ala. 708; *First National Bank of Gadsden v. Sproull,* 105 Ala. 275, 16 South. 879; *Prout v. Hoge,* 57 Ala. 31; *Williams v. Cox,* 78 Ala. 327; *O'Neal v. Seixas,* 85 Ala. 80, 4 South. 745.

(3) 3. "Where one who, though having no previous interest and being under no obligation, pays off a mortgage or advances money for its payment at the instance of the mortgagor, and for his benefit, such person is in no true sense a stranger and volunteer, but is, under the doctrine of equitable assignment, entitled to be subrogated to the lien of said mortgage for reimbursement of the amount paid thereon."—*Motes v. Robertson et al.,* 133 Ala. 630, 32 South. 225; *Allen, Adm'r, v. Caylor,* 120 Ala. 251, 24 South. 512, 74 Am. St. Rep. 31.

[Arnett v. Willoughby, et al.]

(4) The agreement between the complainant and the mortgagors was an agreement in furtherance and in recognition of the above-quoted doctrine, and we think that, taking the allegations of the bill as amended most strongly against the pleader, it is also plain that the assignment by delivery merely of the three notes described in the bill, by Willoughby, and after his death, by Mrs. Willoughby, was done for the purpose of aiding the agreements which had been made by the mortgagors with complainant and Thompson, and that the assignment by delivery merely of the notes, under the peculiar circumstances shown by the bill, was not intended or understood by any of the parties as clothing the transferee with the right to be first paid out of the mortgaged property. We think that the giving by the mortgagors of their notes to the transferees—although the original notes were not canceled but were held as collateral—plainly evidences this intention of the parties. In other words, we think that, under the allegations of the bill as amended, the three transactions upon which complainant rests the equity of the bill as amended were, in fact, loans made to the mortgagors with an understanding that the lien of the mortgage was to cover these loans, and that the assignment by delivery of the three notes by the mortgagee was done for the accommodation of the mortgagors and in furtherance of this agreement, but that it was not understood that thereby the mortgagee subordinated the notes not due to the notes so assigned by delivery.— *McGuire v. Van Pelt et al.,* 55 Ala. 344. For this reason we are not of the opinion that the doctrine announced in *Knight v. Ray,* 75 Ala. 383, viz., that "the transfer of one of several notes secured by mortgage clothes the transferee with the right to be first paid out of the mortgaged property," is applicable to the facts set up in the bill.

(5) 4. We can see no reason why those who claim under the Kyser mortgage, under the facts alleged in the bill as amended, are in a position to object to the foreclosure of the Willoughby mortgage at the suit of complainant. The Kyser mortgage is subordinate to the mortgage through which the complainant claims, and, if the bill as amended correctly states the facts, the complainant has not only done nothing to impair the security furnished by the Kyser mortgage, but the Kyser mortgage was made with the knowledge, either actual or constructive, of the Willoughby mortgage. Those standing in the shoes of the second mortgagee have the right to pay off the first mortgage notes now past due, and the others as they mature; but we do not see how, in a court of equity, they can object to the reimbursement of the complainant of the amount which, under the facts alleged in the bill, was paid by him to the holder of the first mortgage.—*Kelly v. Longshore,* 78 Ala. 204; *Pratt v. Nixon,* 91 Ala. 192, 8 South. 751; *Ware v. Hamilton Brown Shoe Co.,* 92 Ala. 145, 9 South. 136.

(6, 7) 5. The general rule seems to be that: "Where the debt secured by a mortgage is evidenced by several notes maturing at different times, and there is a provision that default of one matures all, or, if such construction can be given by implication, the mortgage may be foreclosed as to all; and, if there is no such provision in the mortgage, then as to the amount due only, and the decree stands as security for the balance, to be sold as the debt matures."—4 Mayf. Dig. p. 249, § 1167, and authorities there cited.

In this case the interest of the complainant can be conserved, and Mrs. Willoughby at the same time not disturbed as to the notes secured by the mortgage which are not due, by a foreclosure of the mortgage as to all

the notes which are past due when the decree of foreclosure is rendered; the decree of foreclosure to stand as security for Mrs. Willoughby as to the notes which have not matured at the time of the rendition of the decree. Out of the proceeds of the sale Mrs. Willoughby should first receive the amount due her on her past-due notes, and then the complainant should be paid the amount due him. Of course, as Mrs. Willoughby, in her mortgage, is given the right to foreclose the mortgage as to all of the notes whether due or not, she can, by a cross-bill, if she sees proper to file one praying that relief, obtain a decree of foreclosure as to the entire indebtedness.—*Authorities, supra.*

(8) 6. In the case of *Evans et al. v. Faircloth-Byrd Mercantile Co.*, 165 Ala. 176, 51 South. 785, 21 Ann. Cas. 1164, this court held that, where a wife gives a mortgage on her property to secure her husband's debt, the mortgage is void, and that a junior mortgagee of the wife, whose mortgage contains covenants of warranty as to title and against prior incumbrances, is entitled to raise the question of the invalidity of the first mortgage and to have it declared to be void, in order that on foreclosure of the second mortgage the entire land might be subjected to the second mortgage.

The allegations of the bill as amended do not bring the complainant within the reason of the rule declared in *Evans v. Faircloth-Byrd Mercantile Co., supra.* In so far as the complainant's rights as shown by the bill as amended are concerned, it does not matter to him whether the mortgage to Kyser was or was not null and void, and it does not matter to him whether the sale of the lands under the power contained in the second mortgage was or was not void. The complainant, in his bill as amended, shows that his claim upon the land is superior to the claims which are being made to it

[Arnett v. Willoughby, et al.]

under the Kyser mortgage. It seems to us that the bill, in so far as it seeks to have the Kyser mortgage and the sale had under it declared to be null and void, is seeking relief which is not only not germane to, but which is altogether independent of, and in no way connected with, that feature of the bill as amended which prays for a foreclosure of the Willoughby mortgage. The bill as amended is therefore multifarious and was subject to that ground of demurrer.—*Hardin v. Swoope,* 47 Ala. 273.

In the opinion filed with his decree sustaining the demurrer to the original bill, the chancellor states that the demurrer of the respondent Kyser "is sustained upon the grounds of multifariousness and want of equity, and the demurrers of the other respondents are sustained upon the ground of multifariousness." The decree sustaining the demurrers to the bill of complaint as amended is simply a decree sustaining the demurrers, but there is no opinion accompanying this latter decree. We presume that the chancellor sustained the demurrers to the bill as amended for the same reasons that he sustained the demurrers to the original bill; but, however this may be, we are of the opinion that the bill as amended is wanting in equity as to Kyser and that it is multifarious. The bill can, however, if amended to meet the views expressed in the above opinion, be rendered free from attack by demurrer.

The decree of the chancellor sustaining the demurrer to the bill as amended is affirmed. The appellant is given 30 days within which to amend his bill as amended, so as to meet the views above expressed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and GARDNER, JJ., concur.