263 So.2d 127

**SEMMES NURSERIES, INC., a Corp., et al.**

v.

**Clint McDADE.**

**1 Div. 644.**

Supreme Court of Alabama.

June 1, 1972.

Vincent F. Kilborn, Mobile, for appellants.

Sam W. Pipes, Gordon B. Kahn, Wesley Pipes, Mobile, for appellee.

526

McCALL, Justice.

In this case, the appellants, Semmes Nurseries, Inc., a corporation, and C. Elwood Stephens, mortgagors, filed a bill in equity, against the respondent-appellee, Clint McDade, their mortgagee. The bill prays for a determination and declaration of what amount of money, if any, is owed by the appellants to the appellee, what the security therefor is, whether the amount owed is due, and, if due, to allow the mortgagors a reasonable opportunity to pay the indebtedness, or, in the alternative, to sell the mortgaged property in such manner that it will bring the best result and the highest possible price.

The appellee McDade's answer denies those averments of the bill that present the appellants' claim for relief, and, by way of a cross-bill, McDade, as respondent and cross-complainant, joins Kathryn T. Stephens, who is the wife of Stephens, as a cross-respondent in the suit. The cross-bill likewise prays for a determination of the amount of money due McDade, this to include an attorney's fee as provided for in the mortgage in event of foreclosure; also, that the mortgage, given as security, be ordered foreclosed and the proceeds of the sale be applied toward satisfaction of the indebtedness owed McDade; and, lastly, that a deficiency judgment be entered against all of the cross-respondents for the amount of any indebtedness in excess of that defrayed by the proceeds of the foreclosure sale.

The chancellor, who heard the testimony ore tenus in open court, entered a decree denying the appellants' relief under their bill; and, he granted the appellee relief under his cross-bill. The court determined and found that the mortgage was in default and that the amount due the appellee under the mortgage was $193,807.06, made up of $123,569.34 principal, $55,129.72 interest, and $15,108 attorney's fee. The court ordered the mortgage foreclosed and the property sold in satisfaction of the mortgage debt, after publication of notice of foreclosure. In conducting the foreclosure sale, the Register in Chancery was ordered and directed to sell (a) all personal property not including nursery stock—that in cans, to be offered in certain lots, (b) crops growing in the ground by lots, (c) each parcel of real estate separately without nursery stock and (d) each parcel, including the nursery stock in the ground. The decree further ordered that if a sufficient amount was not realized from the sale to pay the mortgage debt, then all of the property was to be offered as a whole, the Register to accept the bid or bids, totaling the largest amount. The sale was for cash with McDade as mortgagee enjoying the express right to bid and credit against his bid as an offset the amount of the debt owed him. The amount realized at the foreclosure sale, being insufficient

to satisfy the mortgage indebtedness, on appellee's motion, the court entered a deficiency judgment against appellants for $52,354.06. The court further found and decreed that the amount realized at the sale extinguished the debt of the cross-respondent, Kathryn T. Stephens, and she did not appeal.

The underlying facts are that on January 18, 1965, pursuant to an agreement, the appellant, Stephens, who owned 398 of the 400 shares of the capital stock of the corporate appellant, Semmes Nurseries, Inc., executed on behalf of the nursery corporation, as its president, a mortgage of all the corporate properties to the appellee, McDade, to secure the payment of the balance due on three original debts held by him. The first was for the principal balance of $35,597.87, due McDade on the sale to Stephens of 397 shares of stock in the corporation for $44,497.34. The second was for the principal amount of $143,517.48, which was the balance due on $182,601.18 that the nursery corporation owed McDade at the time of the stock sale. The third was for $14,500, the principal balance of an indebtedness of $45,500, that the nursery corporation and Stephens had incurred to McDade.

This mortgage of January 18, 1965, extended, amended, corrected, and supplemented a prior mortgage, executed to McDade by the appellant nursery, on February 28, 1961, to secure the same corporate debt of $143,517.43, and the debt of $45,500. The condition of the mortgage of January 18, 1965, was the payment of the notes, as provided for, when and as the payments became due and payable, and the performance of the other covenants and agreements contained in the mortgage.

The appellants first complain of error in that the court held that no waiver of payments on the mortgage debt occurred. While the mortgagee failed to receive the payments when and as they became due under the notes and mortgage, he, on occasions, remonstrated with the appellant Stephens about failing to pay on the mortgage, and he protested to him that he needed money to live on. To induce payments, the appellee offered and gave Stephens and his wife, as a gift, each a credit of two dollars against their debt for every dollar paid on the corporate debt. Like the trial court, we are unable to agree with the appellants that because the appellee indulged the appellants in not forcing satisfaction of his mortgage at an earlier date upon its default, he thereby waived his rights or was estopped to thereafter assert foreclosure under the mortgage provisions. The appellants suffered extensive damage by reason of unprecedented freezes on two successive years, and, the appellee, though payments were in arrears, not only did not foreclose his mortgage, but lent his personal credit to secure a bank loan to tide the nursery business over. It further appears from the record that when foreclosure was finally instituted in March of 1969, the corporate business, both physically and financially, had so deteriorated that there was concern as to its ability to survive. The equipment was old and considerably worn, many of the fields or plant areas were grown up in weeds, state and federal agriculturalists were threatening to cut off sales to the public because of alleged plant infestation, and the business was extremely low on operating funds. We also observe that earlier the appellant Stephens had purchased another nursery business in his own name upon which he was meeting his obligations and apparently operating a successful business, and, further that the appellee charged that Stephens transferred quantities of nursery stock to his individual nursery before and after foreclosure was begun, without a proportionate liquidation of the appellee's debt. When default was declared and foreclosure instituted in 1969, there was evidence that the balance due the appellee McDade on the stock loan was $29,763.95 principal and $11,450.58 interest, the only credit, since 1961, being two gifts by McDade, on January 5, 1967, totaling $5,834.08. On the Semmes Nursery debt to McDade, $88,515.44 principal and $44,991.-

33 interest was owed. The only credit against this debt, since 1961, was one made on August 25, 1967, for $52,025 which was in exchange for a conveyance to the appellee of some corporate land, and, another credit that same year, of $2,917.04. Lastly, $10,380 principal and $559.80 interest were due on the $45,500 debt to the appellee the last payment of principal thereon having been made October 31, 1966. Payments on all the secured debts were in default.

While appellants averred in their bill both the belief in their ability to pay such sums as may be finally found due, if given a reasonable opportunity to do so, and also an offer to do equity, it does not appear that, during the interval between filing the bill in April 1969 and December 22, 1969, when the court decreed foreclosure, any offer to do equity was actually made or redemption attempted by offering to pay the mortgage debts. It is true that appellants did offer, after foreclosure proceedings were started, to assign to McDade a $4,000 trade acceptance which the appellee declined.

No doubt the trial court considered all of this evidence, as well as the appellants' contention that the appellee exhibited a course of conduct toward them that lead the appellants to believe that the appellee would not insist on payment and satisfaction of his debts, and that he should not be permitted to foreclose his mortgage, or that he should be limited to such earnings as the nursery business might produce for satisfaction of his debts, but the trial court did not find credible evidence to support an order of that kind. Since there was evidence to support a contrary view, we do not think that the court erred in holding there was no waiver or estoppel occasioned. The trial court's ruling on the issue was not therefore so plainly and palpably wrong under the evidence as to warrant the court's reversal. Alabama Pecan Development Co. v. Case, 266 Ala. 471, 97 So.2d 537; Lovelace v. McMillan, 265 Ala. 290, 90 So.2d 822.

■ The general rule as expressed in Arnett v. Willoughby, 190 Ala. 530, 537, 67 So. 426, seems to be that:

" * * * 'Where the debt secured by a mortgage is evidenced by several notes maturing at different times, and there is a provision that default of one matures all, or, if such construction can be given by implication, the mortgage may be foreclosed as to all; and, if there is no such provision in the mortgage, then as to the amount due only, and the decree stands as security for the balance, to be sold as the debt matures.' 4 Mayf.Dig. p. 249, § 1167, and authorities there cited."

■ Since the mortgage in this case contained an acceleration clause, to be operative in event of default in payment of any installment under the mortgage, the court did not err in finding the entire secured debt due as had been declared by the mortgagee.

For the same reasons already stated, the appellants' contentions raised under their assignments of error 5, 1, 2 and 3 are not well taken.

■ The appellants next complain that the appellee was not entitled to interest on the debts, or to an attorney's fee, both of which are expressly agreed to in the notes and mortgage and were allowed by the court. Appellants say that when the appellee applied the credits to principal only, rather than first to interest, and the balance to principal, citing Tit. 9, § 64, Code of Alabama, 1940, the appellee waived interest, because interest is in the nature of an incident to the principal demand, and payment of principal, as such, extinguishes the right to interest in the absence of any agreement or undertaking to reserve interest.

The appellants' argument is answered contra in the case of Alabama City G. & A. Ry. Co. v. City of Gadsden, 185 Ala. 263, 269, 64 So. 91, where the court said:

"Appellee insists that appellant's suit should not be entertained for the reason that it seeks to recover interest only; that the right to recover interest, which is a mere incident to and increment of the principal debt, was lost when payment of the principal was accepted. The general rule is that when the principal subject of a claim is extinguished by the act of the plaintiff, or of the parties acting in unison, all its incidents go with it. Such is the rule where by statute or the practice of the courts interest is awarded in the way of damages. In such case it does not constitute a distinct claim and can only be recovered in an action for the principal; but, where the payment of interest is provided for by contract, it constitutes an integral part of the debt, as much so as the principal debt itself, and an independent action for its recovery may be sustained notwithstanding payment of the principal as such has been made and accepted. 22 Cyc. 1571 et seq. * * *"

■ Under the averments of the appellee's cross-bill, he prayed for a foreclosure of the mortgage, on account of its being in default. The mortgage and the promissory notes provide for an attorney's fee should it become necessary for the appellee to employ an attorney to collect the sums due and secured, or to foreclose the mortgage. The appellee's claim for an attorney's fee and his evidence in support thereof was restricted to the foreclosure aspect of the lawsuit. The fee was properly allowed.

There was no error in allowing interest and attorney's fee in this case.

The decree of the court and the mortgage instrument, which it ordered foreclosed, both empower the mortgagee to bid for and purchase the subject property at foreclosure; and, the decree further authorizes the appellee to discharge his bid for purchase by entering it as a credit on the debt owed to him up to the full amount of principal and interest. We see no material dif-

ference in reducing the appellants' mortgage debt by offsetting a credit, and reducing it by a payment in cash. When the mortgagee purchases, he does so for the benefit of the account of the mortgagor to the extent of his bid. On the other hand, the mortgagor is indebted to the mortgagee purchaser for the amount of the mortgage debt.

In 59 C.J.S. Mortgages § 576 b (3), p. 972, the following statement appears:

"* * * The entry of a credit on the mortgage debt for the amount of the bid is equivalent to receiving cash where the creditor buys; * * *"

Again on page 982 of that same volume, § 579, we find a similar statement:

"* * * It has been held that the validity of a sale will not be affected by the fact that the purchaser pays no money and that the amount of the bid is applied on the debt due from the beneficiary under the mortgage to the purchaser, and that, where property is sold under a deed of trust and the trust creditor or his agent bids in the property, it is not necessary for him to pay the amount of the bid to the trustee, and for the latter to go through the useless ceremony of receiving the money and paying it back to the creditor; the act of the creditor in crediting the amount of his bid to the debt constitutes payment by him. * * *"

■ Appellants say that allowing the mortgagee to credit his bid, in effect, prevented any fair sale, because other bids, which had to be for cash, could be easily topped by the simple expedient of McDade offering a credit.

■ Financial means or advantages of an individual, whatever its legitimate source, which enable one person to offer a higher bid than another at a judicial sale is not in our opinion a legitimate legal con-

sideration in deciding the fairness of the sale. There will always be some who have greater financial means than others, and we think it makes no difference whether this advantage is gained because one holds a credit or because one holds the cash money to enable him to bid the highest amount. The appellants' objection is not well taken.

The mortgaged real property consisted of nonadjoining parcels which were employed in the single purpose of a nursery business. The court decreed that the manner of sale should be first by parcel with direction that, if, prior to completion of the sale, a sufficient amount had become bid to pay the debt in full plus all costs, no further mortgaged property should be offered, and after this method, by a sale en masse. It appears that the offer of sale and the sale were made in conformity to the directions of the court. The sale en masse was for $140,000. This was $59,635 more than the aggregate of the total bids of $80,365 when offered by parcels.

■ The appellants assign as error the manner in which the court directed the property to be sold. They suggest in their brief that a proper sale in a case of this kind would have been to appoint a receiver to care for and harvest, at proper times, the nursery stock in pots and in the ground, dispose of the machinery and effects in an orderly liquidation, and then should funds not be realized to pay the debts, auction the real estate off in separate parcels.

■ There is no statutory provision, applicable in the instant case, directing the method by which a sale of mortgaged property is to be made. Ordinarily mortgaged property should be sold by separate parcels, where it appears that sale of a portion will bring enough to satisfy the amount of the debt that is due, or, where a larger price will be brought by such meth-od. "But if the court finds that a sale of the whole will be most beneficial, the whole may be sold in the first instance, though all the installments are not due. * * *" McGregor v. Shipp, 238 Ala. 221, 223, 189 So. 740. Here, the sale en masse, as confirmed, is shown to have greatly exceeded the aggregate of the bids for it in parcels. The method of sale was addressed to the sound discretion of the equity court, and we find no abuse of this discretion. In Wiltsie on Mortgage Foreclosure, 5th Ed., Vol. 2, § 683, p. 1106, the author states'

"Sales may be directed in such manner and quantity and en masse or in parcels as in the discretion of the court will secure the highest price. A sale of the whole premises in one parcel can be most beneficial to the parties only when the mortgagee will receive, and the mortgagor will be able to pay, from the proceeds thereof, the largest amount of the mortgage debt, or when the sale will leave the largest surplus after the payment of the whole debt. * * *

"On proof that a sale in parcels will probably be injurious to the interests of the defendants, the court may decree the sale of the whole of the mortgaged premises in one parcel though composed of separate and distinct tracts or lots."

In Sieben v. Torrey, 252 Ala. 675, 42 So.2d 621, the court said this concerning judicial sales after an order of confirmation had been entered:

" * * * [T]he matter of confirmation rested peculiarly upon the wise discretion of the court and his decision is of weighty consideration on review, De Loach v. White, 202 Ala. 429, 80 So. 813; * * *"

On the facts disclosed in this case we can find no abuse of discretion by the chancellor. There was no error in the manner in

which the court ordered the property to be sold.

The gist of the mortgagor-appellants' argument though, as above set out, is that the court should have appointed a receiver to perform the matters mentioned.

■ We have been cited no authority, where, after a decree of foreclosure, it was held error for the court not to appoint a receiver at the instance of the mortgagor. A defendant is not entitled, as a matter of right, to the appointment of a receiver, even where the plaintiff, in his complaint, has asked for a receiver; and the court will not appoint a receiver, on a defendant's application, if it is opposed by the plaintiff. Wiltsie on Mortgage Foreclosure, 5th Ed., Vol. 2, § 575, p. 940. Further, the appointment of a receiver is a matter addressed to the sound discretion of the court, revisable by the appellate court, and should be exercised with care. Albritton v. Lott-Blackshear Commission Co., 167 Ala. 541, 52 So. 653; Garland v. First National Bank of Scottsboro, 231 Ala. 597, 165 So. 852. We find no error in not appointing a receiver to manage and sell the property.

The appellant Stephens says that while he signed the note for $45,500 with the corporation, Semmes Nurseries, Inc., in 1961, this note had been renewed from time to time, as the mortgage of January 18, 1965 shows, and, there was no evidence that Stephens signed any renewal notes. The last such renewal was said to be on the unpaid balance of $14,500 and was made on August 3, 1964. The appellant Stephens as one of the complainants to the original bill averred that he agreed and consented to the amendment of the mortgage of February 28, 1961, and, in connection with the agreement, he further averred that it was agreed that the mortgagee McDade would extend and renew the balance of $14,500 of the $45,500 debt

which remained unpaid as of August 1964. The bill was placed in evidence and we think it shows that this appellant agreed to the renewals of the note, whether he signed any such renewals or not.

■ The trial court said in its decree that the register received $141,758 from the mortgage sale and that that amount extinguished the debt of Kathryn Stephens. By reasoning that is not entirely clear to us, the argument is made in the appellants' brief that if the court considered the wife's debt extinguished by the foreclosure, then Stephens' liability on that note was extinguished at the same time, and he should be released from the deficiency. We do not agree with the appellant's argument.

If we were to accept that contention, Stephens would, in effect, receive a double credit on the stock loan note. Stephens and his wife were the comakers of the note for the capital stock debt, and thus were jointly and severally liable for that debt. When the wife's liability was extinguished by applying the foreclosure proceeds against that debt, Stephens' liability on that note was likewise terminated. However, Stephens, as a comaker with the nursery corporation, remained jointly and severally liable on the two other notes. When the mortgage sale proceeds, less the amount that extinguished the joint and several liability of Stephens and his wife on the stock loan note, are matched against the remaining balance due on the two other notes and the attorney's fee, a deficiency of $52,354.06 results.

The trial court is due to be affirmed.

Affirmed.

HEFLIN, C. J., and COLEMAN, BLOODWORTH and MADDOX, JJ., concur.