This is the second time that the parties in this personal injury action have been before this Court. See Elmore CountyComm'n v. Ragona, 540 So.2d 720 (Ala. 1989), where the Court affirmed the $136,750 judgment that had been entered in favor of Ms. Ragona against Elmore County, the Elmore County Commission, Melvin Curlee, and Elzie Mehearg, in their official capacities as Elmore County Commissioners, and Richard Joiner.[1]
The Court also noted that "the verdict and judgment will support a recovery by Ms. Ragona against the County defendants only in the amount of $100,000." See 540 So.2d at 727. Thereafter, the county defendants ("the County") paid $100,000 into the trial court to satisfy the judgment. Ms. Ragona filed *Page 1093 
a motion to have the $100,000 released to her and to have post-judgment interest set under Ala. Code 1975, § 8-8-10. The County filed a response to that motion, asserting that $100,000 was the maximum amount that was recoverable from it under Ala. Code 1975, § 11-93-2, and Elmore County Comm'n v. Ragona.
The trial court released the $100,000 to Ms. Ragona and awarded her post-judgment interest in the amount of $32,317.81. The trial court's order reads, in pertinent part, as follows:
"[I]t is Ordered, Adjudged and Decreed:
 "1. That the Clerk of the Circuit Court of Montgomery County immediately pay to Plaintiff's attorneys the $100,000.00 placed on deposit with the Clerk by Defendant Elmore County without the necessity of Plaintiff's satisfying the judgment entered in her favor against Elmore County on October 16, 1986.
 "2. That Plaintiff Barbara Ragona have and recover of Defendant Elmore County the sum of $32,317.81, which constitutes interest at the rate of twelve (12) percent per annum on $100,000.00, through June 27, 1989."
The County appealed. We affirm.
The following issues are presented for our review:
 1) Whether post-judgment interest is recoverable by Ms. Ragona; and
 2) If post-judgment interest is recoverable, whether the trial court erred in computing that interest.
With regard to the first issue, the County contends that § 11-93-2 and Elmore County Comm'n v. Ragona restrict the maximum amount that is recoverable from it to $100,000 and, therefore, that the trial court erred in its determination that post-judgment interest was recoverable by Ms. Ragona in this case. It also contends that the trial court's determination was erroneous under Ala. Code 1975, § 6-6-722. Ms. Ragona argues, on the other hand, that the trial court had the authority under §8-8-10 to award her interest on the judgment and that neither §11-93-2, this Court's previous decision in this case, nor §6-6-722, prohibits her from recovering that interest. We agree.
Section 8-8-10 reads as follows:
 "Judgments for the payment of money, other than costs, if based upon a contract action, bear interest from the day of the cause of action, at the same rate of interest as stated in said contract; all other judgments shall bear interest at the rate of 12 percent per annum, the provisions of section 8-8-1 to the contrary notwithstanding; provided, that fees allowed a trustee, executor, administrator or attorney and taxed as a part of the cost of the proceeding shall bear interest at a like rate from the day of entry."
(Emphasis added.)
Section 11-93-2 provides:
 "The recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for bodily injury or death for one person in any single occurrence. Recovery of damages under any judgment or judgments against a governmental entity shall be limited to $300,000.00 in the aggregate where more than two persons have claims or judgments on account of bodily injury or death arising out of any single occurrence. Recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for damage or loss of property arising out of any single occurrence. No governmental entity shall settle or compromise any claim for bodily injury, death or property damage in excess of the amounts hereinabove set forth."
(Emphasis added.)
Section 8-8-10 authorizes the payment of post-judgment interest as compensation for the loss of use of money as a result of the nonpayment of a liquidated sum for which liability has already been determined. The County does not argue that this section is inapplicable to judgments against a county. See Jefferson County v. City of Birmingham, 235 Ala. 199,178 So. 226 (1938). It takes the position, however, that it has already paid into the trial court the maximum amount that is recoverable from it *Page 1094 
under § 11-93-2 (i.e., $100,000). Section 11-93-2 limits the recovery of damages against a county to $100,000 for, inter alia, "bodily injury or death." By placing a cap on the recovery of damages for "bodily injury or death," did the Legislature intend to prohibit the recovery of interest on a judgment, when the recovery of that interest would allow a total recovery under the judgment to exceed $100,000? After carefully examining §§ 8-8-10 and 11-93-2, as well as the public policies behind the Legislature's providing for the payment of post-judgment interest under § 8-8-10, and its limiting the liability of local governmental entities under §11-93-2, we answer this question in the negative.
Section 8-8-10 clearly states that judgments, such as the one obtained by Ms. Ragona, "shall bear interest." As previously noted, this section provides for the payment of post-judgment interest as compensation for the loss of use of money as a result of the nonpayment of a liquidated sum for which liability has already been determined. Section 11-93-2 places a monetary cap on the amount of damages that are recoverable as compensation for the injury or death giving rise to liability. We see nothing in the language of § 11-93-2 to indicate that the Legislature intended to prohibit a judgment creditor of a county from recovering interest on his judgment, even when such a recovery, together with the recovery of damages for bodily injury or death, would exceed $100,000. Had the Legislature wanted to limit the effect of § 8-8-10, it could have easily done so in § 11-93-2. Instead, it appears to us that the Legislature carefully drafted § 11-93-2 with an eye toward balancing the need to maintain the financial pressure imposed on counties by § 8-8-10, which encourages counties, as well as private citizens, to avoid unnecessary litigation and to pay judgments promptly, against the need to protect the counties against devastatingly high judgments that could jeopardize the funding of necessary governmental services or otherwise disrupt fiscal planning, see Ex parte Stanton, 545 So.2d 58 (Ala. 1989) (where this Court held that the disallowance of interest on workmen's compensation judgments would encourage providers of benefits to initiate long delays and frivolous appeals, because the provider might thereby have the benefit of the money for several years without having to pay any interest on it to the claimant once the provider finally did pay the judgment). See, also, Home Indem. Co. v. Anders, 459 So.2d 836, 841 (Ala. 1984), where this Court, quoting with approval the rationale advanced by the Supreme Court of Wisconsin in Stanhope v. BrownCounty, 90 Wis.2d 823, 842, 280 N.W.2d 711, 719 (1979), stated:
 " 'We are unwilling to say that the legislature has no rational basis to fear that full monetary responsibility entails the risk of insolvency or intolerable tax burdens. Funds must be available in the public treasury to pay for essential governmental services; taxes must be kept at reasonable levels; it is for the legislature to choose how limited public funds will be spent. It is within the legitimate power of the legislature to take steps to preserve sufficient public funds to ensure that the government will be able to continue to provide those services which it believes benefit the citizenry. We conclude that the legislature's specification of a dollar limitation on damages recoverable allows for fiscal planning and avoids the risk of devastatingly high judgments while permitting victims of public tortfeasors to recover their losses up to that limit.' "
In Lienhard v. State, 431 N.W.2d 861 (Minn. 1988), the Supreme Court of Minnesota was faced with a similar issue. In that case, Lienhard sued the State of Minnesota for damages for injuries that he had sustained in a motorcycle accident. A jury returned a verdict in his favor, assessing damages against the state in the amount of $100,000. Lienhard sought to compel payment of the $100,000, plus post-judgment interest. The pertinent portions of the statute sued under, Minn.Stat. §3.736, were quoted in the Minnesota court's opinion, as follows:
 "The state will pay compensation for injury to or loss of property or personal *Page 1095 injury or death caused by an act or omission of any employee of the state while acting within the scope of his office or employment, under circumstances where the state, if a private person, would be liable to the claimant.
". . . .
 "The total liability of the state and its employees acting within the scope of their employment on any tort claim shall not exceed:
 "(a) $100,000 when the claim is one for death by wrongful act or omission and $100,000 to any claimant in any other case.
 "(b) $500,000 for any number of claims arising out of a single occurrence."
431 N.W.2d at 863. (Emphasis added.) The trial court ruled that the state was not liable for post-judgment interest. The Supreme Court of Minnesota reversed, stating in pertinent part:
 "In this case, however, the State's proportionate share of liability for damages is $100,000, and the precise question before us is whether the $100,000 limitation on the 'total liability of the State . . . on any tort claim' pursuant to section 3.736 . . . limits the State's liability for statutory costs, disbursements, and interest as well as its liability for traditional common law compensatory damages. Section 3.736 does not contain any specific reference to costs, disbursements, or interest. Neither does it contain any definition of the term 'tort claim.' The tenor of section 3.736 is that a 'tort claim' is the claimant's demand for compensation due because of personal injury or property loss resulting from the tortious conduct of a State employee.
". . . .
 "Post-verdict and post-judgment interest . . . is compensation for the loss of use of money as a result of the nonpayment of a liquidated sum, for which liability has already been determined, not compensation for the injury giving rise to liability. See McCormack v. Hankscraft Co., Inc., 281 Minn. 571, 573, 161 N.W.2d 523, 524 (1968). For such conventional interest the State is liable to the same extent as any private judgment debtor. It is not part of the tort claim and is not subject to the limitation provided by section 3.736."
We note that two of the cases relied on by the County are distinguishable on the basis of the particular statutory language employed in the law of those jurisdictions from which the cases came, see Berek v. Metropolitan Dade County,422 So.2d 838, 839 (Fla. 1982) ("[n]either the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $50,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $100,000," quoting § 768.28(5), Florida Statutes (1979)), and Turner v. Collins, 390 A.2d 537,539 (Me. 1978) ("[a]ny recovery . . . shall not be in excess of $250,000 including costs," quoting a "1975 Legislative Resolve"). In Lee v. Colorado Department of Health,718 P.2d 221 (Colo. 1986), also relied on by the County, the Supreme Court of Colorado construed § 24-10-114 of the Colorado Governmental Immunity Act as prohibiting a recovery of interest on a judgment against a public entity when the recovery of the interest would cause the total recovery against the public entity to exceed the statutory limits, unless, as provided in the act, the public entity has liability insurance that would cover the excess. The applicable portion of § 24-10-114 was set out in the Colorado court's opinion as follows:
 "(1) The maximum amount that may be recovered under this article shall be:
 "(a) For any injury to one person in any single occurrence, the sum of one hundred fifty thousand dollars."
718 P.2d at 225. The Colorado Supreme Court's interpretation of § 24-10-114, which, arguably, is similar to § 11-93-2, may be persuasive authority supporting the County's position. We believe, however, that our interpretation of § 11-93-2 comports with the intent of the Alabama Legislature. *Page 1096 
We also note that this Court's statement in Elmore CountyComm'n v. Ragona — that Ms. Ragona's judgment would support a recovery against the County only in the amount of $100,000 — must be read in context with other portions of the opinion. The full paragraph in which that statement appears, and the paragraph immediately preceding it, read as follows:
 "The jury returned its verdict in the amount of $100,000 compensatory and $50,000 punitive damages for Barbara Ragona and $0.00 (zero) damages for Thomas Ragona. When asked to explain the failure to award any damages for Thomas, a juror responded: '[W]e felt that he was Mrs. Ragona's son so she should be responsible for his medical bills. That's what the jury decided.'
 "Under § 11-93-2, as an illustration, if the jury had awarded damages to Thomas Ragona for his personal injuries, and awarded to Barbara Ragona an additional amount in property damages over and above the $100,000 award for her personal injuries, Ms. Ragona could collect from the County defendants both the $100,000 personal injury award and the property damage award not to exceed an additional $100,000. Her son could also recover the award for his personal injuries not to exceed $100,000. However, the jury's award did not include any money damages for the son or any property damage for Ms. Ragona. As rendered, the verdict and judgment will support a recovery by Ms. Ragona against the County defendants only in the amount of $100,000."
540 So.2d at 727. (Emphasis in original.) The issue presented in the present case was not before this Court in Elmore CountyComm'n v. Ragona, and this Court's decision in that case in no way supports the County's contention that post-judgment interest is not recoverable by Ms. Ragona.
Likewise, we are not persuaded by the County's contention that the trial court's order was erroneous under § 6-6-722. That section provides:
 "If any county treasurer or other custodian of county funds fails, on demand and without good excuse, to pay an allowed claim against the county when there are funds in the treasury to pay the same, judgment may be obtained against him and his sureties, or any or either of them, on five days' notice, on motion in the circuit court of the county, in the name of the party to whom the claim is payable, his legal representatives or assigns for the amount of the claim, with interest from the time of the demand and 10 percent damages and costs."
The County's brief, in pertinent part, reads as follows:
 "Even if interest may be recovered from a county in excess of the statutory limit of $100,000.00, such interest may be recovered only after a plaintiff complies with the procedures set forth in section 6-6-722 of the Alabama Code and Edmundson v. DeKalb County, 51 Ala. 103, 105
(1874). . . . The remedy provided by . . . section [6-6-722] applies to a judgment creditor in plaintiff's position.
". . . .
 "The plaintiff offered no evidence that she registered her judgment with the County Commission, that the County had funds available to pay the judgment, or that the County failed to pay the judgment without good excuse. The trial court simply awarded interest from the date of the judgment as a matter of law. The County properly raised the applicability of section 6-6-722 . . . and the trial court erred in awarding post-judgment interest without proof that the plaintiff had complied with the section."
Section 6-6-722 provides a remedy to a creditor of a county when the "county treasurer or other custodian of funds fails, on demand and without good excuse, to pay an allowed claim against the county when there are funds in the treasury to pay the same." An "allowed claim" is one that has been properly presented to, and allowed by, the county commission.Caldwell v. Dunklin, 65 Ala. 461 (1880). Ms. Ragona presented her claim to the County, in proper form, and the County disallowed that claim. After Ms. Ragona secured her *Page 1097 
$100,000 judgment, and after this Court's decision inElmore County Comm'n v. Ragona, the County paid $100,000 into the trial court to satisfy the judgment. The trial court later released those funds to Ms. Ragona and, pursuant to her motion, awarded her post-judgment interest in the amount of $32,317.81, under § 8-8-10. Section 6-6-722 did not require Ms. Ragona to "[register] her judgment with the County Commission" as a prerequisite to her obtaining an award of post-judgment interest. Interest on the judgment was authorized by the Legislature in § 8-8-10, and the County had no authority to disallow Ms. Ragona's claim for that interest.
The County's reliance on Edmundson v. DeKalb County, 51 Ala. 103
(1874), and Vincent v. Gilmer's Executor, 51 Ala. 387
(1874), is misplaced. In Edmundson, the Court held that the judgment creditor could not collect his judgment by way of a garnishment action against the county. The Court reasoned that to allow funds to be drawn from the custody of the county treasurer by process of garnishment, founded on a judgment against the county, would interfere with the order in which payment of claims was to be made under statute and would destroy the rights of those who had properly presented and registered their claims. The Court stated:
 "The judgment creditor is not without remedy. He can register his claim, and obtain payment, as other creditors of the county are required to do. If the commissioners' court have power, and refuse to levy a tax sufficient to meet the judgment, or any other claim against the county properly audited and allowed, a mandamus will lie to compel them. If the treasurer has funds liable to the payment of a claim, and he fails or refuses to pay on demand, an ample and summary remedy is prescribed against him and his sureties. Tarver v. Com'rs of Tallapoosa County, 17 Ala. 527; Marshall County v. Jackson County, 36 Ala. 613; R.C. § 930."
51 Ala. at 106. Edmundson should not be read as imposing a duty on a judgment creditor to register his judgment with a county commission as a prerequisite to obtaining an award of post-judgment interest. In Vincent, the issue was whether the claim against the county, which had been audited and allowed by the Court of County Commissioners, bore interest from the day of its allowance to the day of its payment by the county treasurer. The Court held that it did not. Neither Edmundson
nor Vincent supports the County's position.
Having determined that post-judgment interest is recoverable by Ms. Ragona, we must consider the second issue presented by the County — whether the trial court erred in computing that interest. The County contends that the trial court computed the interest from October 16, 1986, the date that the trial court entered its judgment on the jury's verdict, to a date after the $100,000 was paid into the court, and that this computation resulted in an award of post-judgment interest to Ms. Ragona in excess of the amount allowed by law. We disagree.
The jury returned its verdict in favor of Ms. Ragona against all of the defendants on October 3, 1986, and the court entered a final judgment on that verdict on October 16, 1986. The record and briefs indicate that the parties agree that the interest did not begin to run on the date of the jury's verdict. See Beam v. Alabama Power Co., 510 So.2d 185 (Ala. 1987). It appears to us that the trial court properly awarded Ms. Ragona interest from October 16, 1986.[2] It also appears to us that the trial court properly computed interest for the period of time that lapsed between the payment of the $100,000 into the court and the release of that money to Ms. Ragona. On May 17, 1989, the County filed a document in the trial court entitled "Satisfaction of Judgment," along with its payment. That document reads as follows: *Page 1098 
 "Come now Elmore County, the Elmore County Commission, and Melvin Curlee and Elzie Mehearg, in their official capacities as Elmore County Commissioners, and pay into court the sum of $100,000.00 in full satisfaction of the judgment rendered against them in this case. This amount is the maximum recoverable from these defendants under Section 11-93-2 of the Alabama Code."
The following day, Ms. Ragona moved the trial court to release the $100,000 to her and to set post-judgment interest. That motion reads as follows:
 "Come now the Plaintiffs and move this Honorable Court for an order directing the Clerk of the Montgomery County Circuit Court to release $100,000.00 to the Plaintiffs in this action. Plaintiffs further move this Honorable Court for an order establishing the interest to be paid on the judgment that was entered by this Court and later affirmed by the Supreme Court. As grounds for said motion, Plaintiffs would show unto this Honorable Court the following:
 "1. Defendants have paid into the Circuit Clerk's office the sum of $100,000.00. They have also instructed the Clerk of the Court not to release the $100,000.00 until a satisfaction of judgment has been signed.
 "2. The $100,000.00 sum does not contain any interest on the judgment since the judgment was rendered. Plaintiffs are entitled to interest on the judgment at 12% per annum according to Alabama law.
 "WHEREFORE, Plaintiffs request this Honorable Court to set this matter as soon as possible for a hearing and to issue an order consistent with this motion."
(Emphasis in original.) On June 27, 1989, the trial court entered its order releasing the $100,000 and awarding post-judgment interest through that date. The County contends that it properly paid the $100,000 into the court on May 17, 1989, and that Ms. Ragona could have accepted the money on that date. Therefore, it argues, it should not be required to pay interest on the judgment after May 17, 1989. Ms. Ragona contends that her acceptance of the $100,000, under the condition stated by the County, would have constituted an accord and satisfaction and, therefore, that she would have been precluded from later recovering the interest. Ms. Ragona takes the position that, under the circumstances, the payment of the $100,000 into the court did not toll the running of interest on the judgment.
Interest runs on a judgment until the judgment is paid. §8-8-10; Hunt v. Ward, 262 Ala. 379, 79 So.2d 20 (1955). The payment of money into the court is a proper means of satisfying a judgment. In the present case, however, the County, by paying the $100,000 into the court as full satisfaction of the judgment, sought to satisfy not only Ms. Ragona's claim that had been liquidated by the judgment (i.e., $100,000), but also her unliquidated claim for post-judgment interest. Had Ms. Ragona accepted the $100,000, an accord and satisfaction would have resulted and the interest would not have been recoverable. See O'Neal v. O'Neal, 284 Ala. 661, 227 So.2d 430 (1969);Boohaker v. Trott, 274 Ala. 12, 145 So.2d 179 (1962); see, also, 1 Am.Jur.2d Accord and Satisfaction, §§ 6, 21 (1962). Even though the $100,000 was paid by the County into the court, the condition that was attached to its acceptance placed it out of the reach of Ms. Ragona, until the trial court ordered its release on June 27, 1989.
We note that the County's reliance on Thomas v. LibertyNational Life Ins. Co., 368 So.2d 254 (Ala. 1979), is also misplaced. In that case, Thomas, the beneficiary under four industrial life insurance policies, sued Liberty National to recover interest on the face amount of the policies accruing between the dates when proof of loss was submitted and when the face amount of the policies was paid. The trial court entered a summary judgment for Liberty National on the ground that Thomas was precluded, as a matter of law, from recovering the interest on the policies because he had previously accepted payment of the principal. This Court reversed the judgment, rejecting Liberty National's contention that the statutory provision sued under, Ala. Code 1975, *Page 1099 
§ 8-8-8, did not create a contract right to the interest and, therefore, that the claim for the interest did not constitute a distinct claim recoverable by Thomas after her acceptance of the principal amount under the policies. This Court stated, in pertinent part, as follows:
 "It is well settled that, under [Ala. Code 1975, § 8-8-8], interest on the principal due on an insurance policy is properly payable from the date that proof of death was accepted by the insurer. North Carolina Mutual Life Insurance Co. v. Terrell, 227 Ala. 410, 150 So. 318 (1933). See also State Farm Mutual Automobile Insurance Co. v. Reaves, 292 Ala. 218, 292 So.2d 95 (1974) (interest payable covering period between filing of proof of loss and date of judgment against insurer).
 "[Liberty National] does not dispute that interest is generally owed from the time proof of death is submitted. [Liberty National] argues, however, that, where interest is provided for otherwise than under contract, it does not constitute a distinct claim recoverable after the acceptance of the principal.
 "This Court has a long history of cases holding that, where a statute governs the rights, obligations, and duties of an insurer or insured, that statute is read into and becomes a part of the insurance contract. See, e.g., Ginsberg v. Union Central Life Insurance Co., 240 Ala. 299, 198 So. 855 (1940) (§ 27-15-18, Ala. Code 1975, Incontestability Clause); State Farm Mutual Automobile Insurance Co. v. Reaves, 292 Ala. 218, 292 So.2d 95 (1974) (§ 32-7-23, Ala. Code 1975, Uninsured Motorist Statute); General Mutual Insurance Co. v. Ginn, 283 Ala. 470, 218 So.2d 680
(1969) (§ 27-14-7, Ala. Code 1975, Effect of Misrepresentation in Policy Application).
 "In Aetna Life Insurance Co. v. Wade, 210 Ala. 170, 97 So. 636 (1923), in construing § 8-8-8, Ala. Code 1975 (then § 4620, Alabama Code of 1907), this Court stated:
 " 'The law existing at the time of the issuance of this policy entered into and became a part of the contract, and under the provisions of the foregoing statute we think interest was demandable from the time the policy was due and payable by virtue of the contract entered into.' " (Emphasis added [in Thomas].)
 "It is apparent that § 8-8-8, Ala. Code 1975, became a part of the insurance contract and, therefore, became a contractual right. The law is settled that if interest is provided for by contract, a separate action for interest may be maintained even after acceptance of the principal amount. Semmes Nursery, Inc. v. McDade, 288 Ala. 523, 263 So.2d 127 (1972); Alabama City, G. A. Ry. Co. v. City of Gadsden, 185 Ala. 263, 64 So. 91
(1913).
 "Admittedly, this State has a long line of cases distinguishing statutory interest from contractual interest. Westcott v. Waller, 47 Ala. 492 (1872); Hunnicutt Lumber Co. v. Mobile Ohio Railroad Co., 2 Ala. App. 436, 57 So. 73 (1911); Louisville N.R.R. Co. v. Elmore and Brame, 10 Ala. App. 627, 65 So. 695 (1914). These cases are in line with the general rule regarding the collectability of interest. At 47 C.J.S., Interest, § 71, it is stated:
 " 'Where interest is provided for by contract and is due and payable, it constitutes a specific claim for which an independent action may be brought . . . On the other hand, where interest is recoverable otherwise than under contract, it does not constitute a distinct claim and can only be recovered with the principal by action.'
 "We have carefully considered these cases and disagree with the reasoning that allows the collection of interest after the acceptance of principal when the right to interest is expressed in the contract, but not when the right to interest is mandated by statute. We have searched in vain and find no basis for the distinction, especially in the light of our cases which would read the statute into the contract, making it a part of the agreement. *Page 1100 
 "We note Liberty National does not contend that the principle of accord and satisfaction is here applicable; and we agree that this principle cannot be invoked to bar recovery. Indeed, the principle of accord and satisfaction would be a more viable defense if the action sought to establish the right to contractual interest after the acceptance of the principal amount — both parties being equally aware of their rights. See, 1 Am.Jur.2d, Accord and Satisfaction, § 1, at 301."
368 So.2d at 258-59. Relying on Thomas, the County contends that a claim for post-judgment interest under § 8-8-10 is a distinct claim that may be pursued in an action after acceptance of payment of the judgment. Assuming this to be true, the right to maintain an action for interest under such circumstances is, nonetheless, unavailing if the right to the interest has been relinquished through an accord and satisfaction. Therefore, contrary to the County's assertions, Ms. Ragona could not, under its interpretation of this Court's decision in Thomas, have accepted the $100,000 and, thereafter, recovered interest on the judgment under § 8-8-10. It should be noted that in Thomas, Liberty National did not contend that the principle of accord and satisfaction was applicable. In any event, the Court stated that the principle could not be invoked to bar Thomas from recovering her interest. The Court's statement was prompted by the fact that Liberty National never disputed that interest began to run from the time proof of death was submitted and the fact that Liberty National apparently did not place any conditions on Thomas's acceptance of the principal. The Court provided further insight into its statement regarding the applicability of the principle of accord and satisfaction when it noted that the principle would be a "more viable" defense to an action seeking interest after the acceptance of the principal if both parties were equally aware of their rights — the implication being that while Liberty National was aware of its statutory obligation to pay the interest at the time it paid the principal, Thomas was not.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, JONES, ALMON, SHORES, ADAMS, STEAGALL and KENNEDY, JJ., concur.
[1] The Court held that the trial court did not err in refusing to reduce the judgment to $100,000 pursuant to Ala. Code 1975, §11-93-2, because that section affects only the recovery of damages, not the amount for which a judgment can be entered.
[2] We note that post-judgment motions for a judgment notwithstanding the verdict or, in the alternative, a new trial, were timely filed by the County and co-defendant Richard Joiner, and that they were later denied by the trial court. The interest on the judgment continued to run while these motions were pending. Rule 37, A.R.App.P.