This is the second appeal in this wrongful death case. SeeCity of Birmingham v. Benson, 631 So.2d 902 (Ala. 1993).
The primary issue is whether the $100,000 damages cap on municipal liability found in Ala. Code 1975, § 11-93-2, is applicable to indemnity claims under Ala. Code 1975, § 11-47-24. We hold that the $100,000 cap is applicable to claims that seek to have municipalities indemnify their negligent employees.
The facts relative to this appeal are substantially as follows. On January 8, 1993, the Circuit Court of Jefferson County entered a judgment on a jury verdict against the City of Birmingham and one of its police officers for the wrongful death of the plaintiff's decedent. The City of Birmingham appealed;[1] this Court affirmed the $1,600,000 award. Benson,631 So.2d 902. A certificate of judgment was filed on January 11, 1994. On February 1, 1994, the City of Birmingham filed a "Notice Of Satisfaction Of Judgment," indicating a payment of $113,092.29. This amount included $100,000, the amount of the §11-93-2 cap, plus interest from January 8, 1993.[2] The plaintiff then instituted garnishment proceedings against the City in an attempt to recover the balance of the original judgment. Writs of garnishment were issued to AmSouth Bank and Compass Bank. The City opposed this action by asserting that its obligation was satisfied by the payment of the $113,092.29. The circuit court held that the City was liable only up to $100,000 because, it held, the plaintiff's decedent's death did not involve the operation of an automobile or equipment, to which the court held § 11-47-24 is limited.
The plaintiff contends first that the City of Birmingham waived any right to raise the cap as a "defense" by failing to make a post-trial motion in the original circuit court action to reduce the judgment to $100,000. In support of this contention the plaintiff cites Northeast Alabama Reg. Med. Ctr.v. Owens, 584 So.2d 1360 (Ala. 1991). In Owens the circuit court refused to grant a JNOV or a new trial for a hospital against which a jury had returned a $350,000 verdict. The circuit court refused to rule on a motion by the hospital to reduce the verdict to the $100,000 amount allowed by the cap. The circuit *Page 84 
court held, citing Nowlin v. Druid City Hosp. Bd.,475 So.2d 469 (Ala. 1985) (Nowlin I), that the issue of the cap was premature until the plaintiff attempted to execute on the judgment. In addition, the circuit court refused to take evidence on whether the Medical Center was a governmental entity within the meaning of the indemnity statute, a fact that was in dispute in Owens. In addressing these issues, this Court stated:
 "Although Nowlin II [St. Paul Fire Marine Ins. Co. v. Nowlin, 542 So.2d 1190 (Ala. 1988)] did not specifically overrule Nowlin I, Nowlin II
specifically holds that a judgment against a governmental entity, by virtue of § 11-93-2, was effectively reduced from $500,000 to $100,000. In practicality, Nowlin II sets a cap on the amount of a judgment, because one cannot execute on a judgment in an amount greater than $100,000. In fact, the statute specifically provides that '[n]o governmental entity shall settle or compromise any claim for bodily injury, death or property damage in excess of the amounts hereinabove set forth.' Section 11-93-2.
 "We hold that the trial court erred in its determination that the application of the statutory cap was not operative until there was an execution on the judgment. . . . If the trial court finds that the Medical Center is a governmental entity within the meaning of the statute, then the trial court must reduce the verdict to a sum not exceeding $100,000, plus interest, in conformity with § 11-93-2."
Owens, 584 So.2d at 1363-64.
Nothing in Nowlin I, Nowlin II, or Owens can fairly be said to require a municipal defendant to move in the circuit court to have a verdict reduced to the statutory amount. On the contrary, this Court's decision in Owens makes it clear that a circuit court must reduce a verdict if the defendant is determined to be a governmental entity. The fact that the legislature mandated that no settlement exceed the statutory cap amount is further evidence that it did not intend for a municipality to pay more than the cap amount. For this Court to require a municipal defendant to make a motion to implement the mandatory damages cap would undermine the policy of limited liability that the legislature intended. Therefore, we hold that the City of Birmingham was not required to move to have the judgment reduced and did not waive the right to have the judgment reduced. As this Court stated in Owens, when a defendant is determined to be a governmental entity the trial court must reduce the judgment to $100,000.
The second issue is whether § 11-47-24, which requires a municipality to indemnify its employees in certain circumstances, is applicable to all tort actions against employees of municipalities or only to actions arising from injuries that the employee causes "while operating a motor vehicle or equipment engaged in the course of his employment." The plaintiff contends that there is no limitation on the amount of indemnity provided by § 11-47-24 and thus that the City is responsible for the entire amount of the judgment. In response to this argument, the City argues that the indemnification provisions of § 11-47-24 apply only to injuries that the employee causes while operating a motor vehicle or equipment.
Section 11-47-24 states:
 "(a) Whenever any employee of a municipal corporation of the State of Alabama shall be sued for damages arising out of the performance of his official duties, and while operating a motor vehicle or equipment engaged in the course of his employment, such government agency shall be authorized and required to provide defense counsel for such employees in such suit and to indemnify him from any judgment rendered against him in such suit. In no event shall a municipal corporation of the state be required to provide defense and indemnity for employees who may be sued for damages arising out of actions which were either intentional or willful or wanton.
 "(b) All municipal corporations of the State of Alabama are hereby authorized to contract at governmental expense for policies of liability insurance to protect employees in the course of their employment." *Page 85 
The circuit court held that § 11-47-24 was inapplicable in the present case because the misfeasance of the municipal employee did not involve the "operation of a motor vehicle or equipment." Thus the circuit court held that the City of Birmingham was not required to indemnify the negligent police officer, and was liable only for $100,000.
The plaintiff argues that the phrase "operating a motor vehicle" is a nonrestrictive phrase and does not exclude all other claims from the indemnity protections of § 11-47-24. The City argues that the circuit court properly held that §11-47-24 applies only to injuries caused by employees while operating a motor vehicle or equipment; it argues that the statute is clear on its face and, therefore, that there is no need to determine the legislative intent behind the statute.
Section 11-47-24 is ambiguous. It is not clear, on its face, whether it is intended to apply only to motor vehicle and equipment accidents or to all actions in tort. The plaintiff argues that the phrase beginning "and while operating a motor vehicle or equipment" is a "non-exclusive explanatory phrase" rather than a "limiting phrase" — that is, it merely explains what is already included within the preceding phrase, rather than limiting the preceding phrase. In support of this argument, the plaintiff points out that, typically, nonrestrictive modifiers are set off by commas while restrictive modifiers are not. The phrase in question in §11-47-24 is set off by commas. However, this argument for resolving the ambiguity is not persuasive because the sentence being construed does not follow established rules of grammar so as to allow us to interpret the sentence by applying the rule that nonrestrictive modifiers are set off by commas.
In a stronger argument, the plaintiff points out that the title to the Act codified as § 11-47-24 reads:
 "To require municipal corporations of the State of Alabama to provide defense and indemnity for employees who may be sued for damages arising out of the performance of their official duties and while in the course of their employment, provided the action of the employee was neither intentional or willful or wanton, and to authorize the obtaining of liability insurance to cover such employees."
1988 Ala. Acts, Act No. 88-657. The subject of a law must be "clearly expressed in its title." Ala. Const. 1901, Art. IV, § 45. The title to that Act in no way limits the scope of §11-47-24 to indemnification only as to injuries caused by an employee's operation of a motor vehicle or equipment. To the contrary, the title states that indemnity shall be provided for damages assessed that arise out of the employee's performance of his official duties and while in the course of his employment. This same language is found in the text of §11-47-24. If indemnity was to be provided only for actions arising out of the negligent operation of a motor vehicle, or some article of equipment, there would be no need for the two distinct phrases: "performance of official duties" and "while operating a motor vehicle . . . in the course of their employment." These two phrases must mean different things. Considering both the ambiguity created by the phrasing and the constitutional problem of failure to express the subject in the title if the Act were read to apply only to the operation of motor vehicles or equipment, we conclude that the intent of the legislature could only have been to provide indemnity in situations where the employee acted negligently in "performing his official duties," specifically including situations where the employee acted negligently "while operating a motor vehicle . . . in the course of his employment." Accordingly, we hold that the indemnity provided in § 11-47-24 is not limited to actions arising out of motor vehicle or equipment accidents. Thus, the City of Birmingham must indemnify its negligent police officer for the judgment suffered.
Having determined that § 11-47-24 is applicable in the present case, we reach the principal issue of whether the cap on municipal liability found in § 11-93-2 limits the City's liability. Section 11-93-2, in pertinent part, states:
 "The recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for bodily injury or death for one person in any single occurrence. Recovery of damages *Page 86 
under any judgment or judgments against a governmental entity shall be limited to $300,000.00 in the aggregate where more than two persons have claims or judgments on account of bodily injury or death arising out of any single occurrence."
The question is whether the City may be liable for more than $100,000 when it is required to indemnify a negligent employee. To answer this question, it is helpful to review the origin and demise of municipal immunity and the legislature's subsequent enactment of the liability caps. The common law rule of municipal immunity developed from the theory that "the king could do no wrong." Jackson v. City of Florence, 294 Ala. 592,320 So.2d 68 (1975). This rule was a part of Alabama law until this Court abolished municipal immunity in Jackson. Following the demise of municipal immunity, the legislature, pursuant to its power over municipalities, created the liability caps contained in § 11-93-2.
Section 11-47-24 was enacted after § 11-93-2, and the two provisions seem to conflict. To determine whether the express language of § 11-93-2 or the language of § 11-47-24 should be followed, we must consider the intention of the legislature in passing each section. The City asserts that the plaintiff is arguing that § 11-47-24 repealed § 11-93-2 by implication. The plaintiff responds by saying that he is not arguing repeal by implication, but rather is arguing that the cap does not apply, simply because the legislature did not expressly reference the cap in § 11-47-24. This is a distinction without a difference. For the cap not to apply to indemnity claims, the cap would have to have been repealed by the legislature's adoption of §11-47-24. Implied repeal of a statute is not favored by the courts and will be found only when the two statutes are so repugnant to, or in such conflict with, one another that it is obvious that the legislature intended to repeal the first statute. Amoco Production Co. v. White, 453 So.2d 358, 362
(Ala. 1984). Therefore, we must determine whether the legislature intended to repeal the municipal liability cap.
 "The purpose behind § 11-93-2 was stated by this Court in Home Indemnity Co. v. Anders, 459 So.2d 836, 841 (Ala. 1984), when we quoted with approval from Stanhope v. Brown County, 90 Wis.2d 823, 280 N.W.2d 711 (1979):
 " ' "It is within the legitimate power of the legislature to take steps to preserve sufficient public funds to ensure that the government will be able to continue to provide those services which it believes benefit the citizenry. We conclude that the legislature's specification of a dollar limitation on damages recoverable allows for fiscal planning and avoids the risk of devastatingly high judgments while permitting victims of public tortfeasors to recover their losses up to that limit." ' "
St. Paul Fire Marine Ins. Co. v. Nowlin, 542 So.2d 1190, 1194
(Ala. 1988) (Nowlin II). This holding was reiterated in Garnerv. Covington County, 624 So.2d 1346, 1354-55 (Ala. 1993), where this Court stated, "Because cities and counties are exercising governmental functions, however, and because judgments against them must be paid out of public moneys derived from taxation, the reasonable limitation of § 11-93-2 on awards against them must be sustained." This rationale is no less applicable to the question now before this Court. The need to preserve the public coffers does not disappear simply because the plaintiff has proceeded against a negligent employee of the municipality rather than, or in addition to, proceeding directly against the municipality.
For § 11-93-2 to be given proper effect, the cap must be applicable to indemnity actions. If it were not, the City could be subjected to judgments over $100,000 just as surely as if the cap were not in place, because almost all actions against municipalities will be based on allegations of negligence by municipal employees. Thus, if plaintiffs were able to circumvent the cap simply by naming an employee as a defendant and then requiring the city to indemnify the employee for the entire amount of a large judgment, the cap would effectively be repealed. This result can be avoided by construing the two statutes harmoniously — holding that § 11-47-24 provides for indemnification only to the limits of § 11-93-2. " 'If there is a reasonable field of operation, by a just construction, *Page 87 
for both [statutes], they will be given effect.' " City ofTuscaloosa v. Alabama Retail Ass'n, 466 So.2d 103, 106
(Ala. 1985) (quoting earlier cases). The policy of protecting the public coffers, for the benefit of all of the citizenry, necessarily outweighs the policy of indemnifying negligent municipal employees beyond the $100,000 cap amount.
The legislature even clarified this point by amending §11-47-190 to add the following sentence:
 "However, no recovery may be had under any judgment or combination of judgments, whether direct or by way of indemnity under Section 11-47-24, or otherwise, arising out of a single occurrence, against a municipality, and/or any officer or officers, or employee or employees, or agents thereof, in excess of a total $100,000 per injured person up to a maximum of $300,000 per single occurrence, the limits set out [in] the provisions of Section 11-93-2 notwithstanding."
§ 11-47-190, as amended by 1994 Ala. Acts, Act No. 94-641, effective April 26, 1994.
Because we hold that a municipality may indemnify a negligent employee only up to the limits specified in § 11-93-2, the result reached by the circuit court was correct. Therefore the judgment of the circuit court holding that the City of Birmingham had fulfilled all of its obligations by paying the $113,092.29 is affirmed.
AFFIRMED.
SHORES, KENNEDY, INGRAM and COOK, JJ., concur.
MADDOX and BUTTS, JJ., concur in the result.
[1] The officer did not appeal.
[2] No issue is raised as to whether the inclusion of interest violates the cap, and we see no reason to disallow such interest. See Ala. Code 1975, § 8-8-10. For simplicity of reference, we will refer to the judgment as a $100,000 judgment.