746 So.2d 1001 (1999)
Jamie L. SMITHERMAN et al.
v.
MARSHALL COUNTY COMMISSION et al.
1971866.
Supreme Court of Alabama.
August 27, 1999.
Rehearing Denied October 22, 1999.
*1002 Benjamin E. Baker, Jr., and Richard D. Stratton of Hogan, Smith & Alspaugh, P.C., Birmingham, for appellants.
James R. Shaw and R. Gordon Sproule, Jr., of Huie, Fernambucq & Stewart, L.L.P., Birmingham, for appellees.
Lawrence M. Wettermark of Galloway, Smith, Wettermark & Everest, L.L.P., Mobile for amicus curiae Mobile County (on application for rehearing).
James W. Webb, Kendrick E. Webb, and Bart Harmon of Webb & Eley, P.C., Montgomery, for amicus curiae Association of County Commissions of Alabama (on application for rehearing).
David G. Wirtes, Jr., and George M. Dent III of Cunningham, Bounds, Yance, Crowder & Brown, L.L.C., Mobile, for amicus curiae Alabama Trial Lawyers Ass'n (on application for rehearing).
Frank C. Ellis, Jr., of Wallace, Ellis, Fowler & Head, Columbiana, for amicus curiae Shelby County (on application for rehearing).
Julian D. Butler and George W. Royer, Jr., of Sirote & Permutt, P.C., Huntsville, for amicus curiae Madison County (on application for rehearing).

On Application for Rehearing
PER CURIAM.
The opinion of April 23, 1999, is withdrawn, and the following is substituted therefor.[1]
*1003 Jamie L. Smitherman sued, by and through her mother, alleging that the defendants Marshall County; the Marshall County Commission; and past and present Marshall County commissioners and the county engineer, acting individually and in their official capacities, had negligently and/or wantonly designed and/or maintained a Marshall County road and that their negligence and/or wantonness had caused a motor-vehicle accident in which Smitherman was severely injured. Smitherman's mother also sued the same defendants. Both plaintiffs made various claims for damages arising from the injuries sustained by Smitherman in the accident. The trial court entered a partial summary judgment for all defendants except the County. It made that summary judgment final, pursuant to Rule 54(b), Ala. R. Civ. P., and the plaintiffs appealed. We affirm in part, reverse in part, and remand.

Facts and Procedural History
On August 4, 1995, Smitherman, a minor, was a passenger in an automobile driven by Robin Kilpatrick. As the automobile traveled along Martling Road in Marshall County, Kilpatrick lost control of the vehicle, which left the roadway, ran upon a pile of dirt, became airborne, and landed in a creek.
Smitherman suffered injuries that rendered her a quadriplegic. She and her mother, Shirley A. Mote, sued Kilpatrick, along with both past and present Marshall County commissioners; the county engineer, Bob Pirando; the Marshall County Commission; and Marshall County. The plaintiffs claim that the Marshall County defendants were under a legal duty to maintain Martling Road; that they had been provided with notice of dangerous conditions on Martling Road; and that they had negligently or wantonly failed to take the action necessary to keep the roadway in a reasonably safe condition.
The plaintiffs moved for a partial summary judgment, seeking, in part, a ruling from the trial court that the statutory governmental-entity damages cap of § 11-93-2, Ala.Code 1975, did not apply to the Marshall County defendants in their individual capacities. Those defendants responded with their own summary-judgment motion.
The trial judge, after holding a hearing on the motions, entered the following order:
"This matter came before the Court on Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment.... [T]he Court finds that the Defendants' Motion for Summary Judgment is due to be GRANTED in part and denied in part, and Plaintiffs' Motion for Partial Summary Judgment is due to be DENIED. The Court makes the following rulings of law and fact:
"1. There is no evidence that County Engineer, Bob Pirando, acted in his individual capacity with regard to the issues presented in the Plaintiffs' Complaint. Accordingly, Bob Pirando, in his individual capacity, is dismissed with prejudice.
"2. As stated in Cook v. County of St. Clair, 384 So.2d 1 (Ala.1980), and Calvert v. Cullman County Commission, 669 So.2d 119 (Ala.1995), the Defendant commissioners, in their individual capacities cannot be sued in tort. Accordingly, the commissioners, in their individual capacities, are dismissed with prejudice.
"3. The Plaintiffs have sued the county commissioners and the county engineer, in their official capacities, and the Marshall County Commission, in addition *1004 to suing Marshall County, Alabama. However, this Court finds that suing the county commissioners, in their official capacities, the county engineer, in his official capacity, and the Marshall County Commission is only another way of pleading a claim against the entity, Marshall County, Alabama. Calvert v. Cullman County Comm'n, 669 So.2d 119 (Ala.1995); Elmore County Comm'n v. Ragona, 561 So.2d 1092 (Ala.1990). Accordingly, the Marshall County Commission, its county commissioners and the county engineer, in their official capacities, are dismissed with prejudice; however, Marshall County remains as a Defendant.
"4. The court finds that the statutory cap set out in § 11-93-2, Ala.Code 1975, applies to Plaintiffs' claims against Defendant, Marshall County, Alabama.
"5. Defendant, Marshall County, is immune from punitive damages as per § 6-11-26, Ala.Code 1975.
"6. The issues involved in Defendants' Motion for Summary Judgment are novel and there is no just reason for any delay in the entry of final judgment and the Clerk of the Court is hereby ordered and directed to enter this as a final judgment, except as to the remaining claims against Marshall County, on the records of the Clerk of the Circuit Court."

I.
We first consider the trial court's ruling that the county commissioners and the county engineer are not amenable to suit in their individual capacities. The trial court relied on Cook v. St. Clair County, 384 So.2d 1 (Ala.1980), in which this Court held:
"Counties are amenable to suit in tort under Code of Alabama, 1975, § 11-1-2. Because counties, as bodies corporate, act through their governing bodies, the county [commissions, the] commissioners likewise are subject to suit in tort, not in their individual capacities but only in their official capacities."
384 So.2d at 7 (opinion on application for rehearing). It is therefore clear that the summary judgment was properly entered for the commissioners as to the claims against them in their individual capacities.[2] With regard to the claim against the county engineer in his individual capacity, the plaintiffs present no argument as to why the summary judgment was not proper as to the county engineer, and the record supports that summary judgment as to the county engineer. Consequently, we affirm the judgment as it relates to the county commissioners and the county engineer in their individual capacities.

II.
We next consider the trial court's holding that an action against the county commissioners, in their official capacities; the county engineer, in his official capacity; and the Marshall County Commission is only another way of pleading a claim against Marshall County. The defendants point to Calvert v. Cullman County Commission, 669 So.2d 119, 120 (Ala.1995), in which this Court stated: "[T]he difference between naming a county as a defendant and naming its governing body as a defendant is a difference in nomenclature." Relying on this statement, the defendants contend that the summary judgment was proper as to the claims against the county commission and the county officials, in their official capacities, and in their brief they argue:
"Since suit against the commissioners and the county engineer, in their official capacity, and the county commission is simply a suit against Marshall County, the statutory cap of § 11-93-2, which protects counties, applies to Plaintiffs' claims."
*1005 To the extent that Calvert and other cases imply that there is no legal distinction between counties and county commissions, they are incorrect and are overruled. In taking this action, we note that there was disagreement on the Court about the rationale used by the majority in Calvert, and one of the Justices wrote a special concurrence in which he concurred with the result reached in that case but disagreed with the rationale used as it related to the distinction between a county and a county commission:
"[A] `county commission,' which was previously called a `board of revenue,' is the governing body of the county, and is not the county itself. A county commission is similar to a city council or the state legislature. The county commission is the entity, of course, that governs the county, and in many counties the probate judge is the chairman of the county commission. For example, to sue a county requires presentment of an itemized, verified claim to the county commission within 12 months of the accrual of the claim, and the commission's denial or reduction of the claim within 90 days. See §§ 6-5-20, 11-12-5, 11-12-6, and 11-12-8, Ala.Code 1975; see also Health Care Auth. v. Madison County, 601 So.2d 459 (Ala.1992).
"There are other statutory functions and powers exercised by county commissions. For example, if a person wants a permit, the county commission has the power to decide the merits of the permit request and render what could be called a final decision, subject, of course, to limited, deferential review on the ultimate issue. See Taxpayers & Citizens of Lawrence County v. Lawrence County, 273 Ala. 638, 143 So.2d 813 (1962).... [T]he only statutory authority county commissions have regarding claims against a county for the county's alleged negligence is to receive and file them. The county commission cannot finally adjudicate the merits of the person's claim. That power is reserved to the courts. Steadham v. Sanders, 941 F.2d 1534 (11th Cir.1991).
"In this case, it is Cullman County, not the Cullman County Commission, that is alleged to have been negligent. Any judgment in the case should be against Cullman County, not against the county commission or the county commissioners.
"... [O]f course, ... there could be instances when the county commission or the county commissioners collectively or individually might be proper parties, if either were under a legal duty to act or not [to] act. In those instances, the judgment would be against either for breach of a legal duty."
Calvert, 669 So.2d at 124 (Maddox, J., concurring in the result but disagreeing with the rationale).
Several of the briefs filed in support of the defendants suggest that the rationale in the special concurrence in Calvert more closely expresses the intent of the Legislature in adopting the cap statute, and we agree with the principle that there is in fact a legal distinction between a county and its commission. We also hold that, similarly, there is a legal distinction between a county and its employees, acting in their official capacities. Further, it is clear from Cook, as quoted above, that county commissioners may be sued in their official capacities. Therefore, as to the claims against the Marshall County Commission and the county commissioners and the county engineer, in their official capacities, the summary judgment was improper and must be reversed.

III.
We now address the applicability of the statutory cap of § 11-93-2, Ala.Code 1975, to those defendants who will still be involved in this litigation as a result of this opinion: the County; its commission; the commissioners, in their official capacities; and the county engineer, in his official capacity. The trial court held that the cap applied to the County. That holding is not *1006 in dispute here. The question we must determine, however, is whether it applies to the commission and to the commissioners and the engineer, in their official capacities.
The plaintiffs and amicus Alabama Trial Lawyers Association argue that the cap statute should not apply to any entity except the county, citing Ravi v. Coates, 662 So.2d 218, 223 (Ala.1995). In Ravi, this Court wrote:
"The statute states that the cap applies to a governmental entity. A `governmental entity' is defined as:
"`Any incorporated municipality, any county and any department, agency, board or commission of any municipality or county, municipal or county public corporations and any such instrumentality or instrumentalities acting jointly. "Governmental entity" shall also include county public school boards, municipal public school boards and city-county school boards when such boards do not operate as functions of the State of Alabama. "Governmental entity" shall also mean county or city hospital boards when such boards are instrumentalities of the municipality or county or organized pursuant to authority from a municipality or county.'
"Section 11-93-1(1), Ala.Code 1975. Immediately thereafter, § 11-93-1(2) defines `employee':
"`An officer, official, employee or servant of a governmental entity, including elected or appointed officials, and persons acting on behalf of any governmental entity in any official capacity, temporarily or permanently, in the service of the governmental entity, whether with or without compensation, but the term "employee" shall not mean a person or other legal entity while acting in the capacity of an independent contractor under contract to the governmental entity to which this chapter applies in the event of a claim.'
"The Legislature could easily have made certain that the $100,000 cap was applicable to `employees' of `governmental entities,' but it did not do so. `Unprotected joint tort-feasors are not entitled to the statutory protection against the judgment creditor's right to recover in excess of $100,000.' Elmore County Commission v. Ragona, 540 So.2d 720, 728 (Ala.1989) (Jones, J., concurring specially)."
The plaintiffs are correct in stating that in Ravi this Court held that the cap did not apply to nurses employed by a public hospital. However, in that case, this Court did not analyze the distinctions between claims against public employees in their individual capacities and those against public employees in their official capacities. That distinction is a key element in our analysis of this case.
Because of the apparent confusion caused by several of this Court's cases that discuss the application of the statutory cap on damages when defendants other than the governmental entity are sued, we believe that a review of some of the holdings, especially those in which county commissioners or county employees were sued in their official capacities, would be helpful to the bench and bar.
Before beginning that review, however, we point out that we have already concluded above that the summary judgment was proper as to the county commissioners and the county engineer in their individual capacities; consequently, we are concerned only with the claims against them in their official capacities.
This Court has on several occasions considered the question of the applicability of the statutory cap in cases in which judgments have been rendered against officials of a governmental entity. We begin our discussion with Elmore County Commission v. Ragona, 540 So.2d 720 (Ala.1989) ("Ragona I"), where a plaintiff sued Elmore County, the Elmore County Commission, and Elmore County Commissioners *1007 Melvin Curlee and Elzie Mehearg in a personal-injury action arising out of an automobile accident. Curlee and Mehearg were sued only "in their official capacit[ies] as Elmore County Commissioners." Ragona I, 540 So.2d at 722. The jury returned a verdict for the plaintiffs in excess of $100,000. Commissioners Curlee and Mehearg, Elmore County, and the Elmore County Commission all appealed to this Court, raising the question whether the award against the county, the commission, and Commissioners Curlee and Mehearg should be reduced to the aggregate amount of $100,000 because of the damages cap contained in § 11-93-2. Ragona I, 540 So.2d at 727. This Court held that the statutory cap applied and limited any recovery against the county, the county commission, and the commissioners in their official capacities to $100,000. Id. In so holding, this Court stated: "As rendered, the verdict and judgment will support a recovery by Ms. Ragona against the County defendants only in the amount of $100,000." Ragona I, 540 So.2d at 727. (Emphasis added).
In a second appeal in the same case, Elmore County Commission v. Ragona, 561 So.2d 1092 (Ala.1990) ("Ragona II"), this Court specifically noted again that the claims against Commissioners Curlee and Mehearg were claims asserted against them "in their official capacities as Elmore County Commissioners." Id. at 1092. After thoroughly discussing the application of the damages cap contained in § 11-93-2, this Court in Ragona II, consistent with its prior decision in Ragona I, held that the judgment in that case would support a recovery against the county, the commission, and Commissioners Curlee and Mehearg only in the total amount of $100,000. Ragona II, 561 So.2d at 1096.
We hold, therefore, that claims against county commissioners and employees in their official capacity are, as a matter of law, claims against the county and are subject to the $100,000 cap contained in § 11-93-2.
The plaintiffs strongly rely on Ravi to support their claim that the $100,000-cap statute applies only to "governmental entities," and not to county commissioners and the county engineer. Does Ravi conflict with Ragona I and Ragona II? The answer is that it does not. As a matter of fact, Ravi cites Justice Jones's special concurrence in Ragona I[3] to support its conclusion that "`Unprotected joint tortfeasors are not entitled to the statutory protection against the judgment creditor's right to recover in excess of $100,000.'" Ravi, 662 So.2d at 223.
The "unprotected joint tortfeasors" referred to by Justice Jones in his special concurrence in Ragona I were not Commissioners Curlee and Mehearg. Rather, the defendant to whom Justice Jones referred in Ragona I was a third-party tortfeasor wholly unrelated to the county defendants. In Ragona I, the plaintiff sued the county defendants and also sued the driver of the other motor vehicle involved in the collision with the plaintiff. This driver was not a county employee and was clearly not acting within the line and scope of any employment relationship with the county at the time of the accident. In the majority opinion in Ragona I, this Court specifically defined the "County defendants" to include Elmore County, the Elmore County Commission, and Commissioners Curlee and Mehearg "in their official capacity as Elmore County Commissioners." Ragona I, 540 So.2d at 722. The majority opinion in Ragona I held that "the verdict and judgment will support a recovery by Ms. Ragona against the County defendants only in the amount of $100,000." Ragona I, 540 So.2d at 727. Justice Jones's concurring opinion emphasized only that the judgment was not reduced by application of the cap and that *1008 the plaintiff could recover any excess amount of the judgment over $100,000 against "unprotected tortfeasors." The "unprotected joint tortfeasor" in Ragona I was the driver of the other vehicle involved in the accident with Ms. Ragona.
Justice Jones did not state, or even remotely imply, in Ragona I that the Elmore County Commissioners, "in their official capacities," were "unprotected joint tortfeasors." Justice Jones stated:
"This case presents the identical facts used as a hypothetical example in my dissent from the denial of rehearing in St. Paul Fire & Marine Ins. Co. v. Nowlin, 542 So.2d 1190 (Ala.1988) (Nowlin II) (rehearing denied, Jan. 13, 1989), to illustrate the proposition that [§ 11-93-2] does not effect a reduction of the judgment to $100,000the statutory cap on the judgment creditor's right of recovery. Notwithstanding Nowlin II's implicit holding to the contrary, a unanimous Court now holds that the $136,750 judgment against Elmore County and the other joint tort-feasors is not reduced to $100,000, only that the judgment creditor is limited in her recovery against the County to the statutory cap of $100,000, and that the unprotected joint tort-feasor is separately and severally liable for the full $136,750 judgment."
Ragona, 540 So.2d at 727 (emphasis supplied). Justice Jones thus did not state that he disagreed in any way with the holding of the main opinion in Ragona I that the claims against the individual county defendants were subject to the damages cap contained in § 11-93-2. Rather, he stated only that the driver of the other vehicle involved in the collision could not claim the benefit of the damages cap. Because the Court in Ravi clearly misread Justice Jones's concurring opinion in Ragona I, Ravi should not be considered in any way as precedent concerning the plaintiffs' official-capacity claims against the defendants in this case.
The statutory definition of "employee" includes "persons acting on behalf of any governmental entity in any official capacity." § 11-93-1(2) (emphasis added). Further, the definition of "employee" includes elected officials of governmental entities. Id. Thus, it would appear that the Legislature intended that persons such as county commissioners and the county engineer, who act in their official capacities, are "employees" as that term is used by the Legislature in § 11-93-1(2).
In Benson v. City of Birmingham, 659 So.2d 82 (Ala.1995), however, this Court considered the effect of § 11-93-2 in a case where a judgment is entered against a city and its employees and where the city is required to indemnify the employees under § 11-47-24, Ala.Code 1975. The Court, speaking through Justice Almon, wrote:
"`The purpose behind § 11-93-2 was stated by this Court in Home Indemnity Co. v. Anders, 459 So.2d 836, 841 (Ala.1984), when we quoted with approval from Stanhope v. Brown County, 90 Wis.2d 823, 280 N.W.2d 711 (1979):
"`"`It is within the legitimate power of the legislature to take steps to preserve sufficient public funds to ensure that the government will be able to continue to provide those services which it believes benefit the citizenry. We conclude that the legislature's specification of a dollar limitation on damages recoverable allows for fiscal planning and avoids the risk of devastatingly high judgments while permitting victims of public tortfeasors to recover their losses up to that limit.'"'

St. Paul Fire & Marine Ins. Co. v. Nowlin, 542 So.2d 1190, 1194 (Ala.1988) (Nowlin II). This holding was reiterated in Garner v. Covington County, 624 So.2d 1346, 1354-55 (Ala.1993), where this Court stated, `Because cities and counties are exercising governmental *1009 functions, however, and because judgments against them must be paid out of public moneys derived from taxation, the reasonable limitation of § 11-93-2 on awards against them must be sustained.' This rationale is no less applicable to the question now before this Court. The need to preserve the public coffers does not disappear simply because the plaintiff has proceeded against a negligent employee of the municipality rather than, or in addition to, proceeding directly against the municipality.
"For § 11-93-2 to be given proper effect, the cap must be applicable to indemnity actions. If it were not, the City could be subjected to judgments over $100,000 just as surely as if the cap were not in place, because almost all actions against municipalities will be based on allegations of negligence by municipal employees. Thus, if plaintiffs were able to circumvent the cap simply by naming an employee and then requiring the city to indemnify the employee for the entire amount of a large judgment, the cap would effectively be repealed. This result can be avoided by construing the two statutes harmoniously holding that § 11-47-24 provides for indemnification only to the limits of § 11-93-2.... The policy of protecting the public coffers, for the benefit of all of the citizenry, necessarily outweighs the policy of indemnifying negligent municipal employees beyond the § 100,000 cap amount."
Benson, 659 So.2d at 86-87.
The plaintiffs, on application for rehearing, argue that Benson and this case have virtually no relation to each other and that the Benson holding is irrelevant to this case. We cannot agree. We believe Benson is analogous to this present case, even though it involved a city and not a county.[4]
In reaching the conclusion that we do, we have applied the principle that it is the duty of this Court, when construing a statute, to ascertain and give effect to the intent of the Legislature. Ex parte Sanders, 612 So.2d 1199 (Ala.1993). We have carefully sought to determine what the Legislature intended in cases in which an employee of a governmental entity is sued. In Benson, this Court considered the policies behind the statute and concluded, implicitly, that the statute's protection of a county's financial resources must be read broadly.
To hold that the caps of § 11-93-2 did not apply to the claims against the county commissioners and the county engineer in their official capacities would, as we suggested in Benson, effectively repeal that Code section, because then plaintiffs would simply file their actions against employees of a governmental entity instead of the governmental entity itself; in construing acts of the Legislature, we presume that that body "does not enact meaningless, vain or futile statutes." Druid City Hospital Bd. v. Epperson, 378 So.2d 696, 699 (Ala.1979). We must interpret a statute in a way that is consistent with our understanding of the Legislature's intent and that gives some meaningful effect to that intent.
The trial court's judgment is affirmed as it relates to the claims against the county commissioners and the county engineer in their individual capacities, but, as it relates to the claims against the county engineer and the county commissioners in their official capacities, it is reversed. It is also reversed as it relates to the County Commission.
OPINION OF APRIL 23, 1999, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED; APPLICATION *1010 FOR REHEARING OVERRULED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, LYONS, and BROWN, JJ., concur.
JOHNSTONE, J., concurs in part and concurs specially in part.
JOHNSTONE, Justice (concurring in part and concurring specially in part).
I concur in the affirmance of the summary judgment in favor of the defendant county commissioners and county engineer in their respective individual capacities. I further concur in the reversal of the summary judgment in favor of the county commissioners and the county engineer in their respective official capacities.
I specially concur in the holdings that the county commissioners and the county engineer, in their respective official capacities, are protected by the statutory cap established by § 11-93-2, Ala.Code 1975. Section 11-93-1, Ala.Code 1975, expressly includes county commissions and county departments within the definition of "governmental entity." For purposes of the § 11-93-2 cap, although not necessarily for any other purposes, the county commissioners in their official capacity, as the elected officials who compose the county commission, would seem to be synonymous with the county commission itself. Likewise, only for purposes of the § 11-93-2 cap, the county engineer himself, in his official capacity, would seem to be synonymous with the county engineering department. Thus the county commissioners and the county engineer, in their respective official capacities, are "governmental entities," which § 11-93-2 expressly protects with its cap. Section 11-93-2 does not protect anyone or anything not included within the definition of "governmental entity" specified by § 11-93-1.
NOTES
[1] On application for rehearing, this Court received briefs not only from the parties but also from several amici curiae, including the Alabama Trial Lawyers Association and the governing bodies of several counties. The defendants and the counties seek clarification of our holding on original submission, especially in light of several cases this Court has decided involving the statutory cap on damages recoverable from governmental entities. § 11-93-2, Ala.Code 1975. Upon considering the arguments presented by the parties and by amici curiae, we conclude that the application for rehearing is due to be overruled, but we issue this substituted opinion to clarify our holding.
[2] The plaintiffs acknowledge, in a footnote to their brief, "that the law appears to state that [the commissioners] cannot be sued in their individual capacit[ies]."
[3] Elmore County Comm'n v. Ragona, 540 So.2d 720, 728 (Ala.1989) (Jones, J., concurring specially).
[4] In this present case, although there is no indemnification statute applicable to counties that is similar to the municipal-indemnification statute involved in Benson, by naming county commissioners and county employees in their official capacities the plaintiffs have accomplished substantially the same thing as suing a municipal employee for whom § 11-47-24 would require a municipality to provide indemnification.