SHAW, Justice.
The City of Homewood (“Homewood”) and Jerry Wayne Suttles, a police officer employed by Homewood, appeal by permission, in accordance with Rule 5, Ala. R.App. P., from the denial of their motion for a summary judgment in a personal-injury action filed by Eldetraud “Trudy” Roy. We affirm in part, reverse in part, and remand.

Facts and Procedural History

According to the complaint, in May 2006 Roy was walking along Central Avenue in Homewood. When she approached the corner of 29th Court Street and Central Avenue, several Homewood police officers on motorcycles were stopped at the intersection directing traffic. Apparently, a fund-raising event known as the “Torch Run” was underway and participants were about to proceed through that intersection.
Roy alleges that she was given permission by one of the police officers to cross the intersection. As she did so, she was struck by a motorcycle being driven by Suttles: Roy contended that, at the time of the collision, Suttles “was driving at a high rate of speed while conducting ‘leap frog’ maneuvers purportedly to control traffic during the Torch Run event.” Roy suffered numerous injuries.
On April 14, 2007, Roy filed a complaint seeking damages from Homewood, Suttles, and fictitiously named defendants, claiming that they had caused her injuries. She also alleged that Homewood was vicariously hable for Suttles’s actions and for the actions of certain fictitiously named defendants. Roy named Suttles in both his official capacity as a Homewood police officer and in his individual capacity. Suttles and Homewood separately answered Roy’s complaint.
In September 2007, Suttles and Home-wood filed a joint motion seeking a partial summary judgment on the issue of damages. Specifically, they alleged that, at the time of the accident, Suttles was acting in the line and scope of his employment as a police officer of Homewood. Under Ala. Code 1975, § 11-93-2 and §§ ll-47-24(a) and -190, they contended, the maximum amount of damages Roy could recover in her action against them was $100,000. Thus, Homewood and Suttles sought a partial summary judgment, stating:
“The applicable law in the present case is clear. Officer Suttles and the City of Homewood cannot settle or compromised the plaintiffs claims against them for any amount greater than the statutory $100,000 cap. Rather than spend the extraordinary time and expense involved with the litigation of this cause of action, the defendants should be allowed to settle the plaintiffs claims pursuant to the statutory cap. Therefore, there is no genuine issue of material fact as to the maximum amount of damages that the plaintiff could recover from the defendants, and the defendants are entitled to judgment as a matter of law pertaining to their maximum liability of $100,000.
“WHEREFORE, premises considered, the defendants respectfully request this Honorable Court enter an Order, as requested in defendants’ Memorandum of Law, granting Summary Judgment in their favor and holding that the Statutory Cap of $100,000 applies to this cause of action.”
Suttles subsequently also moved for a summary judgment claiming that he was entitled to State-agent immunity as to the claims alleged against him in his individual capacity.
*93 Roy opposed Homewood and Suttles’s motion for a partial summary judgment on the damages issue, arguing that, although the damages for claims against Homewood and against Suttles in his official capacity may be capped at $100,000, the cap does not apply to the claim against Suttles in his individual capacity.
In an order dated June 12, 2008, the trial court granted in part and denied in part the joint motion:
“The City of Homewoodf’s] motion asking this Court to enter judgment stating as a matter of law that the Plaintiff Eldetraud ‘Trudy’ Roy cannot recover against the city an amount exceeding the damages limitations under Ala.Code [1975,] § 11-98-2, is hereby GRANTED.
“To the extent the Defendants’ Motion for Summary Judgment attempts to limit Officer Suttlesf’s] liability of One Hundred Thousand Dollars ($100,000.00) under Plaintiffs claim against him in his personal and individual capacity, Defendants’ Summary Judgment is DENIED.
“The Court further finds that there are genuine issues of fact and that it is for a jury to decide whether Officer Suttles is liable for claims against him in his individual and personal capacity.”[1]
The trial court subsequently certified its June 12 order as appropriate for an interlocutory appeal under Rule 5, Ala. R. App P., and stated that the action presented three controlling questions of law “as to which there are substantial grounds for difference of opinion.” Homewood and Suttles petitioned this Court for an interlocutory appeal pursuant to Rule 5; we granted the petition and ordered answer and briefs.

I.

The first question identified by the trial court is as follows:
“1. Given [Roy’s] concession that the acts which form the basis of her claims against the City of Homewood and Officer Suttles were performed by Suttles in the line and scope of his employment as a police officer for the City of Home-wood, can [Roy] nevertheless state a cognizable, direct claim for relief against Officer Suttles in his individual and personal capacity?”
On appeal, Homewood and Suttles argue that because the accident occurred while Suttles was working in the line and scope of his employment for Homewood, Roy cannot pursue an action against Suttles in his individual capacity. Homewood and Suttles’s sole argument in support of this contention relies on the rationale of our recent decision in Ex parte Hale, 6 So.3d 452 (2008). In Hale, this Court, citing Ex parte Davis, 930 So.2d 497 (Ala.2005), noted that sheriffs (and deputy sheriffs) may be immune, under Ala. Const.1901, art. I, § 14, from a civil action seeking damages from them in their individual capacities. Hale, 6 So.3d at 457. See also Davis, 930 So.2d at 501 (noting that deputy sheriffs enjoy the same immunity as sheriffs). Homewood and Suttles contend that Sut-tles should be afforded similar immunity from a suit naming him in his individual capacity. We disagree.
Sheriffs and municipal peace officers are protected from suits seeking damages from them in their individual capacity by two different forms of immunity: sheriffs are protected by State immunity under § 14, and municipal peace officers are *94 protected by State-agent immunity. These two types of immunity, and accordingly sheriffs and municipal peace officers, are treated differently under Alabama law.
Generally, sheriffs enjoy State immunity under § 14 from actions against them in their individual capacities for acts they performed in the line and scope of their employment. Davis, 930 So.2d at 500-01 (noting in an action against a deputy sheriff that “a claim for monetary damages made against a constitutional officer in the officer’s individual capacity is barred by State immunity whenever the acts that are the basis of the alleged liability were performed within the course and scope of the officer’s employment”); see also Hale, 6 So.3d at 457 (holding that acts by a sheriff, which gave rise to the plaintiffs claim against him, were taken “in the execution of his duties as sheriff,” and, thus, the sheriff was immune under § 14 from an action seeking damages against him in his individual capacity). This immunity is not unlimited and, in certain instances, § 14 does not protect sheriffs from an action against them in their individual capacity. Alexander v. Hatfield, 652 So.2d 1142, 1144 (Ala.1994) (noting situations in which § 14 does not shield sheriffs from an action brought against them in either their official or individual capacities).
Conversely, peace officers are afforded immunity by Ala.Code 1975, § 6-5-338(a), and the test for State-agent immunity set forth in Ex parte Cranman, 792 So.2d 392 (Ala.2000), as modified in Hollis v. City of Brighton, 950 So.2d 300 (Ala.2006) (incorporating the peace-officer-immunity standard provided in § 6-5-338(a) into the State-agent-immunity analysis found in Cranman). See Ex parte Kennedy, 992 So.2d 1276 (Ala.2008), and City of Birmingham v. Brown, 969 So.2d 910, 916 (Ala.2007) (“Immunity applies to employees of municipalities in the same manner that immunity applies to employees of the State.” (citing Cranman, supra)). Under that formulation,
“ ‘[a] State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent’s
[[Image here]]
“ ‘(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers’ arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala.Code 1975.’ ”
Hollis, 950 So.2d at 309 (quoting and modifying Cranman, 792 So.2d at 405). In certain circumstances, a peace officer is not entitled to such immunity from an action seeking liability in his or her individual capacity:
“(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
“(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.”
Cranman, 792 So.2d at 405.
The immunity provided to sheriffs and deputy sheriffs stems from the fact that a sheriff is an executive officer of the State: “A sheriff is an executive officer of the State of Alabama, who is immune from suit under Article I, § 14, Alabama Constitution of 1901, in the execution of the duties of his office.... ” Parker v. Amerson, 519 So.2d 442, 442-43 (Ala.1987). See also Ala. *95 Const.1901, art. V, § 112 (“The executive department shall consist of a governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries, and a sheriff for each county.”). “[A] suit against a sheriff is ‘essentially a suit against the state’ and thus ‘not maintainable’ ” under § 14 of the constitution. Parker, 519 So.2d at 446 (quoting Montiel v. Holcombe, 240 Ala. 352, 199 So. 245 (1940)).
Municipal peace officers, however, are “deemed to be officers of this state” for purposes of Ala.Code 1975, § 6-5-338(a), and thus whether they are afforded immunity when sued in their individual capacity is determined under a different standard:
“ “Whether [§ 14] immunity serves as a defense to an action against a state officer or employee sued in his individual capacity depends upon the degree to which the action involves a State interest....
“ ‘When determining whether a State interest in an action against a state official or employee in his or her individual capacity is sufficient to trigger the immunity granted by § 14, our cases distinguish between the standards applied to those state agents or employees whose positions exist by virtue of legislative pronouncement and those who serve as the constitutional officers of this State. We have held that State-agent immunity may bar an action against a state agent or employee under the principles announced in Ex parte Cranman, 792 So.2d 392 (Ala.2000). See Ex parte Butts, 775 So.2d 173 (Ala.2000) (adopting, by majority, the Cranman restatement of the rule governing State-agent immunity). However, this Court has consistently held that a claim for monetary damages made against a constitutional officer in the officer’s individual capacity is barred by State immunity whenever the acts that are the basis of the alleged liability were performed within the course and scope of the officer’s employment.’ ”
Hale, 6 So.3d at 457 (quoting Davis, 930 So.2d at 500-01 (emphasis in Hale omitted; other emphasis added)).
Homewood and Suttles contend that “[tjhere is no factual or legal basis for treating these immunities any differently under these circumstances.” Homewood and Suttles’s brief at 15. However, as the above authorities indicate, the distinction between the type of immunity afforded sheriffs and the type afforded municipal peace officers is rooted in the unique constitutional status of sheriffs as executive officers, juxtaposed against the position of municipal peace officers, which is created by statute. Although Suttles may be entitled to State-agent immunity under the test in Cranman, as extended in Hollis, Homewood and Suttles have not demonstrated that he is entitled to § 14 immunity under the rationale of Hale, or that Hale provides Suttles with blanket immunity from an action against him in his individual capacity. Homewood and Sut-tles have thus not established that the trial court erred in denying their motion for a summary judgment on this ground.

II.

The trial court’s second controlling question of law is as follows:
“2. If [Roy] can state a cognizable, direct claim against Officer Suttles in his individual and personal capacity (notwithstanding [Roy’s] concession that Suttles’[s] alleged actions which form the basis of her claims were performed by him in the line and scope of his *96 employment), does Alabama law nevertheless cap at no more than $100,000 the damages which, in the event of a finding of liability, [Roy] may in the aggregate recover against the City of Homewood and Officer Suttles?”
Homewood and Suttles argue, citing Benson v. City of Birmingham, 659 So.2d 82 (Ala.1995), and Smitherman v. Marshall County Commission, 746 So.2d 1001 (Ala.1999), that if Roy can maintain an action against Suttles in his individual capacity, then Alabama law caps the recoverable damages against Suttles to $100,000.
Alabama Code 1975, § 11-47-190, states generally that a city or town may be found liable for the actions of its employees, and provides for a statutory cap of recovery:
“No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways, or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body and whenever the city or town shall be made liable for damages by reason of the unauthorized or wrongful acts or negligence, carelessness, or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured. However, no recovery may be had under any judgment or combination of judgments, whether direct or by way of indemnity under Section 11^47-24, or otherwise, arising out of a single occurrence, against a municipality, and/or any officer or officers, or employee or employees, or agents thereof, in excess of a total [of] $100,000 per injured person up to a maximum of $300,000 per single occurrence, the limits set out in the provisions of Section 11-93-2 notwithstanding.”
Section 11-93-2 similarly provides a $100,000 cap for recovery against “a governmental entity”[2]:
“The recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for bodily injury or death for one person in any single occurrence. Recovery of damages under any judgment or judgments against a governmental entity shall be limited to $300,000.00 in the aggregate where more than two persons have claims or judgments on account of bodily injury or death arising out of any single occurrence. Recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for damage or loss of property arising out of any single occurrence. No governmental entity shall settle or compromise any claim for bodily injury, death or property damage in excess of the amounts hereinabove set forth.”[3]
*97 Further, under § 11^47-24(a), municipal corporations are required to indemnify their employees in certain situations:
“Whenever any employee of a municipal corporation of the State of Alabama shall be sued for damages arising out of the performance of his official duties, and while operating a motor vehicle or equipment engaged in the course of his employment, such government agency shall be authorized and required to provide defense counsel for such employees in such suit and to indemnify him from any judgment rendered against him in such suit. In no event shall a municipal corporation of the state be required to provide defense and indemnity for employees who may be sued for damages arising out of actions which were either intentional or willful or wanton.”
In Benson, supra, this Court was called upon to determine whether the $100,000 damages cap on municipal liability found at § 11-93-2 was applicable to indemnity claims under § ll-47-24(a). Specifically, the trial court in that case entered a judgment on a jury verdict in a wrongful-death action against the City of Birmingham (“the City”) and one of its police officers for $1,600,000. The City made a payment of $100,000, plus interest, to the plaintiff, arguing that under § 11-93-2 it was required to pay no more than that amount. However, the plaintiff argued that § 11-47-24 required the City to indemnify its employee and that there was no limitation on the amount of indemnity provided by that Code section; thus, the plaintiff argued, the City was responsible for the entire amount of the $1,600,000 judgment.
This Court described the issue on appeal as “whether the City may be liable for more than $100,000 when it is required to indemnify a negligent employee.” 659 So.2d at 86. Harmonizing the two Code sections, this Court stated:
“For § 11-93-2 to be given proper effect, the cap must be applicable to indemnity actions. If it were not, the City could be subjected to judgments over $100,000 just as surely as if the cap were not in place, because almost all actions against municipalities will be based on allegations of negligence by municipal employees. Thus, if plaintiffs were able to circumvent the cap simply by naming an employee as a defendant and then requiring the city to indemnify the employee for the entire amount of a large judgment, the cap would effectively be repealed. This result can be avoided by construing the two statutes harmoniously — holding that § 11-47-24 provides for indemnification only to the limits of § 11-93-2.”
659 So.2d at 86. We thus held “that a municipality may indemnify a negligent employee only up to the limits specified in §11-93-2....” 659 So.2d at 87.
Additionally, in Smitherman, supra, the plaintiffs sued various county officials and employees for damage sustained as the result of an allegedly improperly maintained roadway. The Court held that the claims against the county officials and county employees named in their official capacity were subject to the $100,000 cap of § 11-93-2. 746 So.2d at 1008. This was because “claims against county commissioners and employees in their official capacity are, as a matter of law, claims against the county....” Smitherman, 746 So.2d at 1007. See also Burgoon v. Alabama State Dep’t of Human Res., 835 So.2d 131, 133 (Ala.2002) (“A suit against ... State agents in their official capacities[ ] is a suit against the State.”).
Insofar as Roy’s action seeks damages against Suttles in his official capacity, as noted in Smitherman,, the cap of § 11-93-2 limits any recovery against Homewood and Suttles to $100,000. Suttles and *98 Homewood thus contend that “it makes no sense at all” for the claims against Suttles in his official capacity “to be governed by the statutory damages cap” without the claims against him in his individual capacity also being subject to the cap. Home-wood and Suttles’s brief at 20. This distinction — capping damages for claims against Suttles in his official capacity but not capping damages for claims asserted against him in his individual capacity— however, is clearly provided by the cited authorities.
Section 11-93-2 caps the damages one may recover “against a governmental entity.” The policy of § 11-93-2 is to “preserve” and “protect! ] the public coffers, for the benefit of all of the citizenry....” Benson, 659 So.2d at 86-87. A claim against an employee in his or her individual capacity, however, does not seek to recover damages from the governmental entity. See Gamble v. Florida Dep’t of Health & Rehabilitative Servs., 779 F.2d 1509, 1513 (11th Cir.1986) (“Whether a state officer is being sued for damages in an official or an individual capacity is not mere semantics; the question is whether the plaintiff is reasonably seeking relief from the state coffers or from the individual’s assets.” (quoted in Ex parte Troy Univ., 961 So.2d 105, 110 (Ala.2006))).
Homewood and Suttles contend that at the time of Roy’s injuries Suttles was acting in the line and scope of his employment and that there is no factual distinction between Roy’s claims against Suttles in his official capacity and in his individual capacity. They thus argue that “the inescapable conclusion is that it makes no sense at all” for damages sought against him in his official capacity to be capped, while damages sought against him in his individual capacity are not. However, no authority is cited or argument advanced demonstrating that this Court or the trial court can consider the individual claim against Suttles as, in substance, an official-capacity claim subject to the cap of § 11-93-2; further, nothing in Benson, Smitherman, or § 11-93-2 allows such a result.[4] “Rule 28(a)(10), Ala. RApp. P., requires that an argument in an appellant’s ... brief contain ‘citations to the cases, statutes, other authorities, and parts of the record relied on.’ ” Long v. Bryant, 992 So.2d 673, 683 (Ala.2008). “ ‘[Wjhere no legal authority is cited or argued, the effect is the same as if no argument had been made.’ ” Steele v. Rosenfeld, LLC, 936 So.2d 488, 493 (Ala.2005) (quoting Bennett v. Bennett, 506 So.2d 1021, 1023 (Ala.Civ.App.1987)). Thus, Homewood and Suttles have not demonstrated that the trial court erred in denying their motion *99 for a summary judgment on this issue.[5]

III.

In its third question, the trial court asks whether a determination of State-agent immunity under Cranman is a question of law or a question of fact:
“If [Roy] can state a cognizable, direct claim against Officer Suttles in his individual and personal capacity (notwithstanding [Roy’s] concession that Sut-tles’[s] alleged actions which form the basis of her claims were performed by him in the line and scope of his employment), [then] Suttles’[s] liability is dependent on, among other things, whether he is entitled to immunity under Ex parte Cranman, 792 So.2d 392 (Ala.2000), and its progeny. Is it a question of law for the court (as is the similar defense of qualified immunity in federal actions under 42 U.S.C. § 1983) or a question of fact for the jury whether Suttles is entitled to such immunity? If it is [a] question of law for the court, then based on the record evidence, is Suttles immune from [Roy’s] claims?”
In its order denying Homewood and Suttles’s motion for a summary judgment, the trial court stated: “The Court further finds that there are genuine issues of fact and that it is for a jury to decide whether Officer Suttles is liable for claims against him in his individual and personal capacity.” Homewood and Suttles construe this as a holding that the availability of State-agent immunity is a question of fact for the jury.
Prior decisions of this Court state that “ ‘ “[t]he applicability of the doctrine of discretionary function [now called State-agent immunity] must be determined on a case-by-case basis, and it is a question of law to be decided by the trial court.” ’ ” Ex parte Sawyer, 984 So.2d 1100, 1106-07 (Ala.2007) (quoting Ryan v. Hayes, 831 So.2d 21, 28 (Ala.2002), quoting in turn Ex parte Davis, 721 So.2d 685, 689 (Ala.1998)). See also Lightfoot v. Floyd, 667 So.2d 56, 64 (Ala.1995) (“The question whether a public official is entitled to qualified immunity is one to be decided as a matter of law.”). In determining whether immunity under Cranman applies, this Court has established a “burden-shifting” process:
“In order to claim State-agent immunity, a State agent bears the burden of demonstrating that the plaintiffs claims arise from a function that would entitle the State agent to immunity. Giambrone [v. Douglas, 874 So.2d 1046,] 1052 [ (Ala.2003) ]; Ex parte Wood, 852 So.2d 705, 709 (Ala.2002). If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. Giambrone, 874 So.2d at 1052; Wood, 852 So.2d at 709; Ex parte Davis, 721 So.2d 685, 689 (Ala.1998). ‘A State agent acts beyond authority and is therefore not immune when he or she “fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.’” Giambrone, 874 So.2d at 1052 (quoting Ex parte Butts, 775 So.2d 173, 178 (Ala.2000)).”
Ex parte Estate of Reynolds, 946 So.2d 450, 452 (Ala.2006). When applied in the *100 context of a motion for a summary judgment, this process may result in an issue of disputed material fact, and a determination of that fact may require resolution by a jury: “If there is a genuine issue as to any material fact on the question whether the movant is entitled to immunity, then the moving party is not entitled to a summary judgment. Rule 56, Ala. R. Civ. P.” Ex parte Wood, 852 So.2d 705, 708 (Ala.2002); Blackwood v. City of Hanceville, 936 So.2d 495, 507 (Ala.2006) (holding that there was a genuine issue of material fact as to the State-agent defendant’s rate of speed; a jury’s determination of that speed would determine whether the defendant was entitled to State-agent immunity and privilege under Ala.Code 1975, § 6-5-338(a) and § 32-5A-7(b)(3)). The existence of a genuine issue of material fact may require a factual issue to be determined by a jury, “under appropriate instructions from the trial court,” Blackwood, 936 So.2d at 507, but the availability of State-agent immunity is ultimately a question of law to be determined by the court. To the extent that the trial court held that the jury would determine the availability to Suttles of State-agent immunity, and not just disputed issues of fact, the trial court’s denial of the motion for a summary judgment is due to be reversed.
Suttles and Homewood request this Court to review the evidence and determine whether Suttles was entitled to State-agent immunity under Cranman. However, it is unclear whether the trial court has yet undertaken such an examination. Specifically, the third question states in part: “If [the existence of State-agent immunity] is [a] question of law for the court, then based on the record evidence, is Suttles immune from [Roy’s] claims?” This issue must first be addressed by the trial court, subject, under appropriate circumstances, to review by this Court.

Conclusion

The trial court’s denial of Homewood and Suttles’s motion for a summary judgment as to the claims against Suttles in his individual capacity is affirmed. That part of the trial court’s judgment holding that the jury is to decide whether Suttles is entitled to State-agent immunity is reversed, and the cause is remanded for the trial court to determine whether Suttles’s summary-judgment motion demonstrates that he is entitled to a judgment as a matter law on that issue.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.

. Although the trial court’s June 12, 2008, order did not purport to rule on Suttles's separate summary-judgment motion asserting State-agent immunity, the trial court nevertheless ruled that Homewood and Suttles’s immunity issue presented genuine issues of fact.

. "Governmental entity” is defined in Ala. Code 1975, § 11-93-1(1), and includes both municipalities and counties.

. See generally Prattville v. Corley, 892 So.2d 845 (Ala.2003), for a discussion of the difference in the scope of § 11-47-190 and § 11-93-2, which is not pertinent in the instant case.

. Homewood and Suttles in their initial brief appear to cite Smithennan for the proposition that because the allegedly tortious acts that form the basis of Roy's claims were performed by Suttles while he was acting in the line and scope of his employment, Roy could sue Suttles only in his official capacity. In an amicus curiae brief, the City of Huntsville specifically argues that Smithennan held “that a public officer or employee defendant engaged in the performance of their official duties acts only within their official capacity and may only be sued in that capacity.” Smitherman, however, does not stand for this proposition. In that case, the trial court held that a county engineer sued in his individual capacity was entitled to a summary judgment because there was "no evidence” indicating that he "acted in his individual capacity with regard to the issues” presented in the complaint. 746 So.2d at 1003. We affirmed the trial court’s judgment because the appellant did not, on appeal, challenge the summary judgment in favor of the county engineer on the claim alleged against him in his individual capacity. Although this Court went on to state, in dicta, that the record supported the trial court’s judgment, this Court did not affirm on the basis of the rationale of the trial court's holding. Id. at 1004.

. Suttles and Homewood also state in the "summary of the argument” and in the "conclusion" portions of their brief that the plain language of § 11-47-190 provides that no recovery may be had against an employee of a municipality in excess of $100,000, regardless of whether the employee is sued in his individual or official capacity. No explanation or elaboration on this argument is found in the initial brief, and no authority is cited supporting their interpretation of the Code section. Therefore, we decline to address this issue.